## UNITED STATES ex rel. LO PIZZO v. MATHUES, U. S. Marshal.

Circuit Court of Appeals, Third Circuit.
November 25, 1929.

No. 4032.

Adrian Bonnelly and Otto Kraus, Jr., both of Philadelphia, Pa., for appellant.

John M. Di Silvestro and George Maxman, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and SCHOONMAKER, District Judge.

BUFFINGTON, Circuit Judge. Salvatore Lo Pizzo, the appellant, was arrested on a warrant dated February 8, 1928, issued by Judge Thompson, of the Eastern district of Pennsylvania. The warrant was based on a mandate of the Secretary of State, dated March 3, 1927, which recited a treaty (15 Stat. 629) with the Kingdom of Italy providing for the extradition of persons accused of crime. Thereafter a hearing was had before the judge, in which Lo Pizzo was represented by counsel, and afforded opportunity to assert his rights. Later the judge rendered an opinion which is printed in full in the margin,[1] allowing extradition.

Thereupon Lo Pizzo sued out a writ of habeas corpus returnable before the same judge, and prayed for his discharge. On hearing, the judge held:

That nothing was then raised "that was not before the court sitting as a committing magistrate, except perhaps his first objection, that is, that the complaint was not sworn to before the judge. I do not think the language of the act requires it to be sworn to before the judge. It says here: ' * * * on oath before a competent judicial magistrate.'

[1] See note at end of case.

"I don't see any sound objection to that, and the fact remains if that is a technicality, it should have been taken advantage of at that time; there was no objection raised at the hearing.

"Another objection presented is the fact that the warrant was signed by the Vice Consul instead of the Consul. They are both representatives of the King of Italy.

"There being no other new points raised, the order of this court is the writ of habeas corpus is dismissed, and the relator is remanded in the custody of the marshal or other proper governmental authority."

We have read with care the entire record and briefs in the case, and we find no error. The principles and proper practice involved in cases of extradition are so fully and correctly stated by Judge Thompson as to require no restatement by this court.

If the deceased man had been killed in Pennsylvania, a committing magistrate, having before him the testimony of the witness, Vito D'Aquino and the widow of the deceased, would have had sufficient to have warranted him in the exercise of his discretion as a committing magistrate to have held Lo Pizzo for trial.

The order of January 7, 1929, dismissing the writ of habeas corpus is affirmed.

NOTE.

The respondent, Salvatore Lo Pizzo, is charged with the murder of one Salvatore Fontani and robbery in the vicinity of the town of Buccheri in Sicily, Italy, on March 13, 1913. The authorities there instituted an investigation during which a great number of persons were questioned by the carabineers, as the result of which charges were laid against the respondent, Giuseppe Di Pasquale, and Giovanni Inganne. Di Pasquale and Inganne were arrested, but Salvatore Lo Pizzo had emigrated to the United States and a trial proceeded against him in his absence.

From the authenticated record of the proceedings during the investigation and trial, it appears that the murder occurred about 5 o'clock in the morning of the above date; that Fontani had started with his mule and cart to another town carrying a sum of money to purchase macaroni for resale; that he was found lying in the cart, dead with gunshot wounds in the face and head. The money was gone.

The mass of testimony has been examined to determine whether there is sufficient evidence to establish probable cause in accordance with the criminal law of this country which would justify a committing magistrate in holding the respondent for trial upon the charges preferred against him. In order to justify his holding for extradition, it is necessary that certain things be established: First, the identity of the accused as the person charged with the crime; and, second, the sufficiency of the evidence to establish probable cause.

1. The respondent was arrested in Nor-

ristown. According to the testimony of Charles L. A. Eiler, superintendent of police, and Frank Sarni, captain of police of Norristown, who is of Italian birth and speaks that language, the respondent was living there under the name of Salvatore or Sam Tuzza but voluntarily admitted, when arrested, that his right name was Salvatore Lo Pizzo. He further admitted that in Italy he had lived at Buccheri. Frank Spino, a witness living in New York City, identified the respondent as Salvatore Lo Pizzo, son of Francisco Lo Pizzo, whom he had known at Buccheri in Italy and who lived near the house of Fontani, the murdered man. The place of residence of the respondent at Buccheri near that of the murdered man, as testified to by Spino, is corroborated by the testimony taken before the magistrates in Italy.

Patrick King, an inspector in the Immigration Service at Ellis Island, N. Y., identified the respondent as a man whom he had arrested under the name of Salvatore Lo Pizzo in 1925, upon a charge of having entered this country unlawfully and of having committed a murder in Italy prior to his entry in this country. He testified that the respondent was given a preliminary hearing and released on bond for his return later for a final hearing but that he failed to appear. He was also identified by Immigration Inspector Zucher of Ellis Island. At the preliminary hearing he gave the name of Salvatore Lo Pizzo.

My conclusion from that testimony is that there is sufficient evidence to identify the respondent as the Salvatore Lo Pizzo named in the authenticated papers offered in evidence on behalf of the Italian government.

2. The principal testimony in support of the petition for extradition is that of one Francesco Buccheri. Buccheri, in a deposition or declaration to the carabineers of Buccheri, stated that early in the morning of March 13, 1913, he saw on the Buccheri Vizzini Road two individuals each carrying a gun; that he recognized them as Giuseppe Di Pasquale and Salvatore Lo Pizzo; that Fontani appeared driving his cart. Buccheri saw Di Pasquale and Lo Pizzo fire at point blank range at Fontani who dropped down dead. After having killed him, they proceeded to rob the dead man of his pocket book. As soon as they saw the deponent, they ran up to him and Di Pasquale threatened him with a knife, saying that if he dared to reveal what he had seen, his life would be forfeited.

Later Buccheri, in a deposition before a magistrate, repudiated his testimony as to having seen the murder and testified that in the proximity of a horse trough, which he had designated as in the locality of the murder, he saw a cart drawn by a mule and the dead body of Fontani in the bottom of the cart with evidence that he had been killed by gun fire in the face. He testified that he saw nothing of the murderers nor was present at the murder and that he did not see any one remove Fontani's pocket book. He testified that it was not true that he had seen Di Pasquale and Lo Pizzo, as testified by him at the police station; that he told that lie because the brigadier had beaten him and compelled him to make that untruthful statement. He testified that during the last two years he had been subject to a nervous complaint. The magistrate who took the deposition certified that he was satisfied that Buccheri was mentally deficient and did not fully grasp the meaning of the questions put to him and that his replies were incoherent.

Later the same witness confirmed the evidence given by him, in which he had repudiated his statement given to the carabineers and testified that one Francesco Mazzone had approached him and a man named Pannesi and told him that he must say that Fontani was killed by Pasquale and Lo Pizzo and that his testimony of having seen the crime was induced by pressure brought on him by one Salvatore Di Pasquale and his brother who had been begging him to speak out and had even promised him money, going to the length of showing him their purse. He insisted on the fact that he saw nothing except the cart containing the dead body of Fontani. The witness concluded his testimony by saying, "I am a silly idiot."

In a later statement, this witness testified that he only saw Salvatore Lo Pizzo, who was holding the bridle of the mule while Fontani was lying dead in the cart; that he saw nothing of Di Pasquale. After being assured that the authorities would take all necessary measures to protect him against any reprisals on the part of Di Pasquale, he testified that he had seen Di Pasquale carrying a gun; that he and one Pennisi were walking along the road behind the cart driven by Fontani and saw two individuals hiding by the road. They allowed the cart to approach, and then one of the individuals fired a shot at point blank range at the face of Fontani killing him instantly. As this was happening, Lo Pizzo was holding the mule by the bridle. The witness ran away panic stricken while his companion was being threatened with instant death if he dared reveal the truth. He stated that it was fear of reprisals which made him say in his previous deposition that he had not seen Di Pasquale and Lo Pizzo at the time of the commission of the crime.

Later he again repudiated the statement that he had seen the murder and reiterated his statement that he saw the cart owned by Fontani and the latter lying dead in the cart and again stated that he had been threatened with beatings and with being locked up which caused him to make the accusations against Di Pasquale and Lo Pizzo.

In addition to the testimony of Buccheri, one Vito D'Acquino testified that at daybreak of the morning of the murder on the road on which the crime had been committed and at a short distance from the place where the cart and the dead man were, he met Salvatore Lo Pizzo and Giuseppe Di Pasquale, the latter carrying a double-barreled gun, and that on the day after the murder Salvatore Lo Pizzo went to him and warned him not to tell any one that he had met them on the previous day.

The documents submitted contain a mass of depositions of other persons which narrate conversations with and statements by Buccheri, much of which is apparently idle gossip on the part of an excited community and merely hearsay. ■■ Much stress is laid by the respondent's attorney upon the alleged weakmindedness of the witness Buccheri. The fact that a witness is insane or of weak mind does not disqualify him as unworthy of belief, although it has a bearing upon his credibility. Whether he is of sufficient mentality to understand the obligation of an oath and to comprehend the subject matter

of the examination, as bearing upon his credibility, is to be determined by the tribunal before which he may be called as a witness against the respondent. Wright v. Southern Express Co. (C. C.) 80 F. 85. District of Columbia v. Armes, 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618.

If the case were heard before a magistrate upon a preliminary hearing for commitment for trial under the law of this country, the committing magistrate would have before him the testimony of Buccheri as an eyewitness of the commission of the crime charged, the warning to Buccheri, the warning to D'Acquino, the fact that the respondent left the jurisdiction shortly after the commission of the crime, that he was identified as having unlawfully entered this country and forfeited his bail by not appearing before the immigration authorities, that he was found living in Norristown under a fictitious name, which latter facts tend to show flight and concealment.

It is not necessary in extradition proceedings that the evidence against the respondent be such as to convince the committing judge or magistrate of his guilt beyond a reasonable doubt, but only such as to afford reasonable ground to believe that the accused is guilty of the offense charged. Fernandez v. Phillips, 268 U. S. 311, 45 S. Ct. 541, 69 L. Ed. 970.

I find that the respondent is sufficiently identified as Salvatore Lo Pizzo who was charged with murder and robbery as set out in the petition, and that sufficient evidence has been produced of his criminality, as, according to the laws of this country, would justify his apprehension and commitment for trial if the crimes charged had been committed here. The evidence will therefore be certified to the Secretary of State, that a warrant may issue for the surrender of the respondent according to the stipulations of the treaty or convention between the United States and Italy.