**ALEAK EDWARDS, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2003/015

District Court of the Virgin Islands

Division of St. Croix

December 9, 2005

DARWIN K. CARR, ESQ., St. Croix, U.S.V.I., *Attorney for Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *Attorney for Appellee.*

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and HOLLAR, *Judge of the Superior Court, Sitting by Designation.*

## MEMORANDUM OPINION

(December 9, 2005)

Aleak Edwards ("Edwards" or "appellant") appeals from his conviction in the Superior Court for aggravated rape, aggravated assault and battery, and child abuse. He presents the following issues for review: 1) Whether the evidence was sufficient to sustain the appellant's

conviction for aggravated rape and aggravated assault and battery; 2) Whether the appellant was deprived of his right to compulsory process where the trial court restricted the fee available to pay an expert witness to provide an independent medical examination of the victim, and; 3) Whether Appellant's trial counsel was ineffective in failing to submit, at the court's invitation, justification for a larger expert fee. For the reasons which follow, we will affirm the appellant's conviction.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

After her teacher, Sonia Knight ("Knight"), expressed concern and questioned seven-year old S.M. about a new scar to her face, S.M. revealed to her that, in response to her screaming following a fight with her younger brother and a beating by her mother, Edwards had struck her with a key chain and then held her by the head and banged her face twice into a wall. [Appendix ("App.") at A107-08]. Subsequently, S.M. also volunteered that Edwards, to whom she referred as her stepfather, had also repeatedly engaged in sexual acts with her. [Id.].

Knight testified at trial that S.M. told her Edwards had her look at "freshy" movies while rubbing himself on her. [Id. at A108]. On another occasion, he had "put her on top of his lap" in the bathroom, as she prepared for a bath. [Id.].

S.M. also later recounted those incidents to social workers who were called to the school. There was also testimony by Social Worker Lisa Ryan ("Ryan") that, during her initial interview with S.M. when social workers were called to the child's school, S.M. additionally revealed to her that Edwards had put his finger in her rectum, which she identified as her "bum," and had also put his penis in her rectum and "in her front." [App. at A117-18, A137].

After reporting the incidents of rape to her teacher, principal, [see App. at A108], and social workers, S.M. was taken to the emergency room of the Juan Luis Hospital, where she also recounted the incidents of abuse to Dr. Anthony Dasilva ("Dr. Dasilva"), the physician on duty at the time. [App. at A192-93]. In each instance, S.M. identified the appellant as the perpetrator.

Upon examining S.M., Dr. Dasilva found her to have a "deficient hymen," which he later explained meant that S.M. did not have a hymen that would be expected in a 7-year-old but, rather, had only a "residual hymen" or a "smidgen" of tissue in the vaginal area. [App. at A183,

A191-92]. Dr. Dasilva also testified, however, that at the time of his examination, he found no evidence of a discharge, redness or trauma in either the vaginal or rectal area. [*Id.* at A183-84]. Additionally, Dr. Dasilva found S.M.'s comfort level and ease during the vaginal exam concerning, noting it was an inappropriate response to such an event for one of such a tender age:

> A   On exam—"OE" means on exam—cheerful, but inappropriate response during vaginal exam ... .
>
> Q   Now, Dr. Dasilva, referring back to Government's Exhibit 2, you indicated in your narrative that during the examination of the child that her response was inappropriate. Can you tell us what you meant by that statement?
>
> A   Yes. I indicated cheerful, but inappropriate during vaginal exam. What I mean by that was for a 7-year-old in general, when you examine them, for a stranger to approach their private area, they tend to clam up. They clam up. It will take a little bit of persuasion, even by their parents, for anybody to get near their private area. And here was a kid during the exam you ask her to open up and easily she did that without persuasion. So, that's inappropriate. That's what I meant by inappropriate during vaginal exam.

[App. at A183, A187]. Based on his examination and the patient history, Dr. Dasilva concluded his findings were consistent with sexual abuse. However, he testified that, given the absence of any sign of recent trauma, it appeared no abuse had occurred within the two weeks prior to his examination of S.M. [App. at A193,196].

At trial, S.M. testified Edwards beat her with a key chain and banged her face into a wall. [App. at A226-27, 255-59]. She also testified Edwards sexually penetrated her on at least three occasions: on the kitchen counter in her home; in her bedroom; and in her mother's bedroom. She also testified that, on a separate occasion when she was about to take a bath, Edwards entered the bathroom and put her "to sit on his lap" and would not stop "doing it," despite her pleas. [App. at A232].

Edwards was charged in Superior Court with four counts of aggravated rape/domestic violence and one count of unlawful sexual contact, one count each of aggravated assault and battery, and two counts

of child abuse/domestic violence. [App. at A66-68]. On Rule 29 motion, however, the court dismissed the charge of unlawful sexual contact in Count V and one count of child abuse in Count VIII, which was also based on the acts supporting Count V. [App. at A367-69, 372-73].

At the time of the incidents for which he was charged, Edwards was the companion of S.M.'s mother and the father of her three siblings. However, it was disputed at trial whether he actually lived in S.M.'s home. S.M. testified Edwards resided with her family at their Lagoon Street apartment. [App. at A244]. However, both Edwards and S.M.'s mother denied he lived in the home, although neither could give a fixed address for Edwards and both admitted he spent considerable time at the residence. [App. at A298-300; 321-24]. The court found the evidence sufficient to establish that Edwards resided in the victim's household. [*Id.* at A357-58].

The defense moved *in limine* for permission to retain an expert to conduct an independent examination of the victim at the public's expense, at a cost of $5,120. In moving for an expert fee allowance, the appellant noted:

> The Government has presented a medical report from Dr. Anthony Dasilva indicating that the minor has a "deficient hymen", a meaningless term. The Government intends to rely on this evidence at trial.
>
> Defendant has contacted Dr. Noel Carr, a well known and reputed obstetrician/gynecologist, whom the defendant intends to retain as an expert to examine the child and give expert testimony in defendant's case in chief. Dr. Carr has agreed to serve.
>
> It is requested from the Court that defendant be authorized to retain Dr. Carr at the Government's expense, and that Dr. Carr be permitted to examine the child for the purpose of determining the presence and status of her hymen and evidence of molestation.
>
> The services of Dr. Carr are estimated at five thousand one hundred twenty dollars ($5,120.00) which will include the evaluation of the alleged minor [sic] and a report, plus his testifying in Court. Defendant will not be able to present an adequate or meaningful defense unless this expert is retained and the evaluation is performed.

[App. at A435-36 (Mot. Requesting Permission to Retain Medical Expert and for Physical Examination of Victim dated September 17, 2002)] (emphasis and internal quotation marks in original). The trial court granted the defense's motion to retain an expert but allotted only $500, noting the absence of any justification for the requested amounts for the purpose stated. In so ruling, the court noted, however, that if necessary the appellant could seek to obtain funds in excess of that amount by submitting justification therefor. [App. at A3-4]. The appellant never submitted a further request or justification for a higher amount.

Edwards was convicted of four counts of aggravated rape/domestic violence; one count of aggravated assault and battery/domestic violence; and one count of child abuse/domestic violence. [App. at A433-34]. He filed this timely appeal.

## II. DISCUSSION

### A. Jurisdiction & Standards of Review

Our jurisdiction to consider this appeal arises under The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court); see also Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[1]

We generally review findings of fact for clear error, and review *de novo* the trial court's determinations of law, construction of statute, or application of legal precepts. *See Poleon v. Government of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bryan v. Government of the V.I.*, 150 F. Supp. 2d 821, 827 n.7 (D.V.I. App. Div. 2001). The decision to permit the defense to retain an expert at the public's expense, and the amount afforded, lies within the discretion of the court and is thus reviewed for abuse of that discretion.

### B. Insufficiency of the Evidence Claims

Appellant incorrectly urges that the standard for reviewing insufficiency of evidence claims is plain error. [*See* Br. of Appellant at

---

[1]  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

5]. However, where, as here, the appellant raised a trial or post-trial challenge to the sufficiency of the evidence, we review *de novo* whether there was substantial evidence which, viewed along with all reasonable inferences which may be drawn therefrom in the light most favorable to the verdict-winner, would permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *See Virgin Islands v. Sampson*, 94 F. Supp. 2d 639, 643, 42 V.I. 247 (D.V.I. App. Div. 2000) (citations omitted). In reaching that issue, we are not to weigh evidence or second-guess the jury's credibility determinations. *See United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). Rather, the appellant bears a heavy burden to establish the insufficiency of the evidence, and reversal of a conviction is warranted only "when the record contains no evidence, regardless of how it is weighted, from which a jury could find guilt beyond a reasonable doubt." *Casper*, 956 F.2d at 421; *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997) (citation and internal quotations omitted).

### 1. Sufficiency of Evidence of Aggravated Rape

The appellant asserts two grounds for finding the evidence at trial insufficient to sustain his conviction for aggravated rape. First, he argues it was not established at trial that the appellant raped the victim, where the attending physician testified only that the victim's hymen was "deficient" but "was unable to state definitively that the ruptured hymen was the result of sexual contact with the appellant" and where he also testified there was no evidence of discharge, redness or trauma to the victim's vaginal area.[2] [Br. of Appellant at 5]. The appellant additionally argues the evidence was deficient where the victim testified the appellant never removed her clothing during one episode of rape occurring on the kitchen counter, despite her testimony that he also inserted his penis into her vagina during that encounter. [*Id.* at 5-6]. On both grounds, this Court rejects the appellant's unsupported arguments that these facts rendered the evidence insufficient.

The appellant was convicted of four counts of aggravated rape, in an act of domestic violence, under 14 V.I.C. § 1700 (a)(1) and 16 V.I.C.

---

[2] The appellant additionally argues in his brief that the evidence was insufficient for a conviction for unlawful sexual contact first degree. [See Br. of Appellant at 5]. However, as noted, that charge was dismissed before submission of the case to the jury. Accordingly, we limit our consideration to the remaining counts.

§ 99(d) (providing additional protection for persons defined in 16 V.I.C. § 91(c)). Conviction under section 1700(a) must be based on evidence that one perpetrated an act of sexual intercourse or sodomy with a person under the age of thirteen who was not the perpetrator's spouse. *See* 14 V.I.C. § 1700(a)(1). Sexual intercourse, as defined in the statute, is "vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia." 14 V.I.C. § 1699(d). "Sodomy" includes carnal knowledge of any person by the anus. 14 V.I.C. § 1699(e).

S.M. testified at trial that Edwards subjected her to at least three incidents of rape while her mother was either at work or sleeping. S.M. testified that in one incident Edwards put her on the kitchen counter and "put his private in mine." [App. at A230]. She later identified the privates as penis and "Virginia," [sic] respectively. [*Id.* at A254]. S.M. further testified Edwards also awakened her in the bedroom she shared with a sibling and repeated the same sexual acts with her while her mother was asleep; in another incident, S.M. testified Edwards had sex with her in her mother's bedroom while her mother was at work. [App. at A232-34]. This testimony alone was sufficient evidence from which the jury could have determined that Edwards penetrated the minor girl. *See Lewis v. Virgin Islands*, 77 F. Supp. 2d 681, 684, 42 V.I. 175 (D.V.I. App. Div. 1999) (citing *Government of the Virgin Islands v. Peets,* Crim. No. 82-11, slip. op. (D.V.I. Div. St. Thomas & St. John filed Oct. 29, 1982) ("uncorroborated testimony of the victim ... is sufficient evidence for conviction"), *aff'd without opinion*, 215 F.3d 1314 (3d Cir. April 20, 2000); *cf. Virgin Islands v. Morris*, 191 F.R.D. 82, 42 V.I. 135 (D.V.I. App. Div. 1999) (finding evidence sufficient for rape conviction where young victim testified to anal and vaginal sexual abuse, despite absence of any signs of trauma to anus or vagina).

There was further evidence which bore on the appellant's guilt, however, as reflected in the testimony of S.M.'s teacher, social worker and the examining physician, who concluded that his findings in the physical examination of the victim was consistent with sexual abuse. All of the evidence, viewed in totality, was a sufficient basis for a finding that S.M. was raped, as defined in the applicable statute, and that the appellant was the perpetrator.

Given S.M.'s testimony that Edwards "put his private *in* mine" during the incident on the kitchen counter, as charged in Count I, we find

equally without merit the appellant's additional argument that his conviction for that charge was not sustainable because the victim testified that no one had removed her clothing during that encounter.

S.M. testified on direct examination that, while she was left in Edwards' care, Edwards called her to the kitchen, placed her on the counter and "put his private in mine." [App. at A230]. On cross-examination, S.M. testified:

Q   (MR. CHRISTIAN) If I understood you correctly, ... , you said that Aleak lift, placed you on a kitchen counter?

A   Yes.

Q   All right. And why did he do that?

A   I don't know.

Q   How long were you on the kitchen counter?

A   I don't remember.

Q   Were you sitting on the kitchen counter?

A   Yes.

Q   Why?

A   He put me there.

Q   And did you come off at any time?

A   No.

Q   You stayed there?

A   Yes.

Q   How did you get off?

A   I come off.

Q   Why?

A   I don't know.

Q   While you were on the kitchen counter, did anything happen to you?

A    Yes.

Q    Yeah?

A    (Nods.)

Q    Did you have your clothes on while you were on the kitchen counter?

A    Yes.

Q    Did you take off your clothes when you were on the kitchen counter?

A    No.

Q    Did anyone take off your clothes while you were on the kitchen counter?

A    No.

[App. at A250-51]. There was no testimony regarding the type or extent of clothing the victim was wearing at the time, nor was the testimony developed regarding the details of how the crime occurred. That notwithstanding, the act completing the crime is the penetration of the victim and, to that, the testimony was sufficient. Whether S.M.'s testimony regarding the appellant's failure to remove her clothing can be said to cast doubt on her testimony that penetration occurred was a determination for the jury and is not a proper basis for disturbing its finding of guilt.

### 2. Sufficiency of evidence of assault

An assault and battery occurs where the perpetrator "uses any unlawful violence upon the person of another with intent to injure him." 14 V.I.C. § 292. That crime becomes an aggravated offense where, as here, the perpetrator is an adult male and the victim a female or child. *See* 14 V.I.C. § 298(5). As we have previously noted, the question of intent is one of fact, to be determined or inferred from the surrounding facts and circumstances of the crime. *See Drew v. Drew*, 971 F. Supp. 948, 951, 37 V.I. 61 (D.V.I. App. Div. 1997) (citing *Government of the V.I. v. Frett*, 14 V.I. 315, 325 (Sup. Ct. 1978)).

Appellant argues the Government failed to prove an intentional act or an intent to injure, where at trial he denied scratching the victim's face

and argued, alternatively, that S.M.'s injuries may have accidentally occurred as he attempted to separate the victim and her mother during an altercation, thus negating the element of intent. [App. at A318-19].

▪ S.M. testified that Edwards had struck her with a key chain and then grabbed her by the head, banging her face twice into the wall, in response to her screaming following a disagreement with her younger brother and a beating by her mother. [App. at A226-27, 255-57]. As a result of Edward's conduct, S.M. was left with an injury to her face sufficient to draw the attention of her teacher. From that testimony and the nature of the assault inflicted on a seven-year-old child, the jury could have determined Edwards intentionally struck S.M. with the intent to cause injury. *See Drew*, 971 F. Supp. at 951.

Edwards' argument simply ignores this contrary evidence from the victim and improperly compels acceptance of his version of events. However, sifting through contradictory testimony and making credibility determinations are matters solely within the province of the jury. *See Georges v. Government of the V.I.*, 119 F. Supp. 2d 514, 523 (D.V.I. App. Div. 2000); *see also United States v. Delerme*, 457 F.2d 156, 160, 8 V.I. 515 (3d Cir. 1972).

Having heard both the appellant's and S.M.'s testimony-regarding the source of S.M.'s facial injuries, the jury-obviously credited S.M.'s version that Edwards disciplined her by intentionally slamming her face into a wall, and it is not the province of the reviewing court to disturb that determination.

### B. Denial of right to have medical expert examine victim

We turn now to the appellant's argument that, in limiting the allowable fee that could be charged to the Government for an expert witness to $500, the trial court denied him the right to effective counsel and to compulsory process.

▪ Criminal defendants are entitled to the effective assistance of counsel and to a fair trial that satisfies constitutional due process, notwithstanding their financial limitations. *See Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971); *Ake v. Oklahoma*, 470 U.S. 68, 76, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985). Implicit in those rights is the right of indigent defendants to have access, at the public's expense, to "the basic tools of an adequate defense or appeal." *Ake*, 470 U.S. at 76-77.

Although there is no constitutional right to state-sponsored expert services, such a right may be implicated where an expert witness is shown to be necessary to mounting a meaningful defense and ensuring a fundamentally fair trial. *See id.*; *see also Caldwell v. Mississippi*, 472 U.S. 320, 323, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985).[3] However, an indigent defendant seeking to obtain expert services must make a threshold showing that an expert is both necessary and material to his defense, and may not rest on bare "undeveloped assertions that the requested assistance would be beneficial." *Caldwell*, 472 U.S. at 323 and n.1 (noting no error in denial of request for criminal investigatory, fingerprint expert and ballistics expert, where no reasoning offered); *Lewis v. Government of the V.I.*, 77 F. Supp. 2d 681, 684, 42 V.I. 175 (D.V.I. App. Div. 1999) (noting that movant must "explain precisely why such assistance is necessary"); *United States v. Gonzales*, 150 F.3d 1246, 1251-52 and n.4 (10th Cir. 1998) (noting defendants must provide court with "explicit detail" showing why the requested expert services are necessary to an adequate defense and what is expected to be found). Upon a determination that the defendant has made such a showing, the trial court may then exercise its discretion to permit use of an expert at the public's expense, and the compensation to be permitted also lies within the discretion of the court, based on a determination of reasonableness. The trial court does not abuse its discretion in that regard in the absence of a clear showing as to the necessity and materiality of the expert testimony. *See Lewis*, 77 F. Supp. 2d at 684-85 (finding no error where the appellant had only "casually" asked the trial court to

---

[3] Protections in that regard are also provided in the federal Criminal Justice Act, *see* 18 U.S.C. § 3006A, which has also been adopted by the District Court of the Virgin Islands for cases heard in that court. *See* LRCR 44.1. Although the Superior Court has not adopted the Criminal Justice Act, however, similar protections and the discretion to implement the goal of providing indigents with reasonable services are codified in title 5, section 3503 of the Virgin Islands Code, which provides:

Attorneys at law appointed by the Superior Court under subsection (a) of this section to represent defendants financially unable to employ counsel <u>may be allowed the necessary expenses, upon verified statements thereof being filed with the clerk of the court</u>. ... The amount of such compensation shall, in each case, be fixed by the court and such compensation and expenses shall be paid out of money appropriated for that purpose by law.

5 V.I.C. § 3503(b) (emphasis added).

appoint a private investigator to aid his defense) (citations omitted); *see also Commonwealth v. Bell*, 706 A.2d 855, 862 (Pa. Super. Ct. 1998).

We cannot conclude the trial court abused its discretion in this instance. Most notably, the trial court, in granting expenses of $500 on the appellant's initial request, did not entirely foreclose the possibility of further expenses. Rather, the trial court, noting the absence of any justification for the requested allowance of $5,120 for "a medical examination," advised the appellant that if any further allowances in excess of $500 were needed, justification would have to be provided. [App. at A3-4]. Despite the invitation to do so, the appellant never submitted a request for funds in excess of that amount, along with a justification as to why the requested amount was reasonable.

### C. Effectiveness of trial counsel

Although identified as an issue in his brief, the appellant has offered no argument for his claim that his trial counsel's failure to provide the court with arguments in support of an increased fee allowance to obtain expert medical testimony amounted to ineffective assistance of counsel. Therefore, as the Government correctly notes, that argument is deemed waived. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) (noting issue deemed waived where not pursued in the argument section of the brief) (citing 16 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3974, at 421 (1977 & Supp. 1993, at 690)).

Even without that infirmity, however, this Court would decline review, because the facts surrounding the attorney's decision not to accept the trial court's invitation to supplement the record or provide justification for an increased expert fee allowance were not developed below and are not evident on this record, thereby precluding any meaningful appellate review of the reasonableness of the attorney's representation in that regard.[4] *See Plaskett v. Gov't of the V.I.*, 147 F. Supp. 2d 367, 372 (D.V.I. App. Div. 2001) (noting that ineffective assistance of counsel claims ordinarily should not be reviewed on direct

---

[4] An attorney's representation is entitled to a presumption of competence, and an appellant challenging the representation bears the burden to overcome that presumption by demonstrating: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *George v. Sively*, 254 F.3d 438, 443, 43 V.I. 351 (3d Cir. 2001).

appeal and are better left for a collateral proceeding, "unless the appellate court can conclude that it has 'an adequate record and thus an additional evidentiary hearing need not be conducted to develop the facts.'") (citation omitted).

## III. CONCLUSION

For the foregoing reasons, this Court will affirm the appellant's conviction for the charges of aggravated rape, aggravated assault, and child abuse. However, because there has been no factfinding surrounding his trial counsel's representation and the appellate record is not fully developed on that issue, and given the appellant's failure to argue that issue in his brief, we will decline to reach the appellant's ineffective assistance of counsel claim. An appropriate order follows.