**HILARIO CASTILLO, Appellant**
**v.**
**GOVERNMENT OF THE V.I., Appellee**

D.C. Crim. App. No. 2004/103

District Court of the Virgin Islands

Division of St. Croix

September 25, 2006

DEBRA S. WATLINGTON, TPD, St. Thomas, U.S.V.I., *For Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For Appellee.*

GOMEZ, *Chief Judge, District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and HODGE, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

(September 25, 2006)

Hilario Castillo ("Castillo" or "appellant") appeals his conviction in the Superior Court for child abuse. He presents the following issues on appeal:

1. Whether the evidence was sufficient to sustain his conviction of child abuse/domestic violence;

2. Whether the jury's guilty verdicts for violation of child abuse are inconsistent with its inability to reach verdict as to all other counts of the information.

For the reasons more fully developed below, the appellant's conviction will be affirmed.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

In 1999, the 12-year old victim in this case, "E.C.," returned to St. Croix to live with the appellant and his wife of about 45 years. Because she is mentally retarded, E.C. was placed in specialized individual education for low-functioning students at a junior high school, where educators testified she was functioning at the kindergarten level. At the time E.C. moved in with the appellant, he had retired from government service. His wife, however, worked six days per week, from 6 a.m. to 5 p.m. and also spent from December through January in Santo Domingo each year. Therefore, the appellant was the primary caregiver. The appellant's wife also testified that she and the appellant occupied separate bedrooms.

On the evening of January 6, 2001, E.C.'s uncle, Hector Ledesma ("Ledesma"), arrived at the Castillo home unannounced and said E.C., in bedclothes, ran outside and pleaded with him to take her. Ledesma left with E.C. and took her to the home of a friend, Griselle Gautier ("Gautier"). While there, E.C. confided what she termed "a secret" to Gautier—that the appellant was having sex, and engaging in sexual contact, with her and that he had "put his thing inside of her." The sexual conduct E.C. recounted was the insertion of a finger into her vagina, the insertion of the penis, or "charlie," into her vagina, fondling and sucking of her breast and genitals, and requiring her to fondle the appellant's genitals. The child reported that the incidents of sexual abuse had

521

occurred everyday after school. E.C. was then returned to Ledesma, who contacted police. On questioning by police, the appellant denied sexual contact with E.C. but said if it did occur, it was while he was drunk and the child sat on his lap.

The child repeated those assertions to social workers, reporting in detail that the appellant had on multiple occasions engaged in sexual intercourse and other sexual contact with her. She said those incidents occurred in the bathroom, her bedroom, the appellant's bedroom, and the living room of their Estate Castle Burke home. Using dolls, she also described to social workers what had happened to her.

During a lesson about good touches and bad touches sometime around March 2001, the victim also volunteered to her teacher, Thelma Sterling ("Sterling"), that she was being subjected to bad touches by the appellant. Her accounts of what occurred again mirrored substantially what she had told to Gautier.

Upon medical examination at the emergency room, E.C. was found to have the genitalia of a sexually active adult. She had no hymen, and the vaginal muscles were relaxed, indicating to the treating physician that she had been sexually abused on more than one occasion. Her breast area was also unnaturally enlarged for a child of her age.

On January 17, 2001, E.C. was again taken to the emergency room complaining of abdominal pains. There, she was seen by another doctor, who also found no hymen and an absence of contracted vaginal muscle.

The government charged Castillo in an 11-count Information with: four counts of aggravated rape/an act of domestic violence (Counts 1-4), in violation of 14 V.I.C. § 1700(a)(1) and 16 V.I.C. § 99(d); four counts of unlawful sexual contact/domestic violence, under 14 V.I.C. § 1708(2) and 16 V.I.C. § 99(d) (Counts 5-8); two counts of child abuse by engaging in sexual intercourse and sexual contact with the minor, in violation of 14 V.I.C. § 505 and 16 V.I.C. § 99(d) (Counts 9-10); and one count of child neglect under section 14 V.I.C. § 504, for knowingly, recklessly or negligently causing physical and/or emotional injury to a child in his care (Count 11).

Prior to submission of the case to the jury, the court dismissed the charge of child neglect under Count 11. The jury was unable to reach verdicts as to the aggravated rape and unlawful sexual contact counts, as charged in counts one through four and five through eight, respectively. However, the jury-convicted the appellant of child abuse/domestic

violence, as charged in counts 9 and 10. The trial court subsequently denied the appellant's motion for judgment of acquittal under FED. R. CRIM. P. 29. The appellant was sentenced on May 7, 2004 to 10 years on each count, to be served concurrently. This timely appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

We exercise jurisdiction to review the final judgment in this criminal matter, under our authority provided in The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction provisions), and Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[1]

The appellant's challenges to the sufficiency of the evidence is subjected to plenary review. *Virgin Islands v. Sampson*, 94 F. Supp. 2d 639, 643, 42 V.I. 247 (D.V.I. App. Div. 2000). In so doing, we are required to determine whether the evidence and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the government as verdict winner, would permit a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt of every element of the offense. *See id.; see also, Abiff v. Gov't of V.I.*, 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004). "Only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt," is reversal warranted. *Abiff*, 313 F. Supp. 2d at 511; *see also, United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992) ("Appellate reversal on the grounds of insufficient evidence should be confined to cases where the failure of the prosecution is clear.").

The admission of evidence at trial, including the determination of the competency of a witness, is reviewed for abuse of discretion. *See United States v. Benn*, 155 U.S. App. D.C. 180, 476 F.2d 1127, 1130 (C.A.D.C. 1973); *United States v. Allen J.*, 127 F.3d 1292, 1294-96 (10th Cir. 1997). Where the appellant fails to preserve the challenged error at trial,

---

[1]  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

however, we review only for plain error. *Lynch v. Gov't of V.I.*, 273 F. Supp. 2d 686, 690 (D.V.I. App. Div. 2003) (citing FED. R. CRIM. P. 52(b)).

## B. Sufficiency of Evidence.

The appellant raises two challenges to the sufficiency of the evidence of child abuse. He argues that the government's case was based exclusively on the testimony of "a mentally retarded child whose ability to distinguish reality from illusion is in question." He additionally asserts there was no physical evidence linking the appellant to the crimes. Each argument will be addressed in turn.

### 1. Whether the Mental Retardation of the Victim Rendered Her Incompetent as a Witness.

Appellant argues the testimony of E.C., who suffers from mental retardation, is insufficient evidence on which a guilty verdict may rest. He argues that, because of her retardation, E.C.'s capacity to separate reality from illusion is seriously impaired. Appellant's assertions that the testimony of a E.C. is not believable and cannot provide the basis for a conviction is flawed in several respects.

This jurisdiction, in line with the prevailing view, has long eschewed any requirement that witnesses meet threshold mental or moral competency requirements before they are permitted to testify. *See* V.I. CODE ANN. tit. 5, § 777. The law now regards every person as "qualified" to be a witness and holds that "no person may be disqualified to testify in any matter," except as otherwise provided in the rules. 5 V.I.C. § 777. Rather, the central inquiry in determining whether a person is unable to give competent testimony is limited to whether:

> (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth.

5 V.I.C. § 831; *see also, Kentucky v. Stincer*, 482 U.S. 730, 741-42, 107 S. Ct. 2658, 96 L. Ed. 2d 631 and n.11 (1987) ("[T]here is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference

between truth and falsehood, as well as of his duty to tell the former.") (quoting *Wheeler v. United States*, 159 U.S. 523, 16 S. Ct. 93, 40 L. Ed. 244 (1895)). In addition, the rules further require that all witnesses take an oath, which is closely tied to the ability to tell the truth, and to testify based on personal knowledge and experience. *See* 5 V.I.C. §§ 832, 833. Given these rules, the mental retardation of the victim-witness, standing alone, does not preclude acceptance of her testimony by the jury, although it may raise an issue of credibility. *See, e.g., United States ex rel. Lo Pizzo v. Mathues*, 36 F.2d 565, 567-68 (3d Cir.1929); Benn, 476 F.2d at 1130.

■ The appellant asserts no facts to permit a finding that the victim in this case was incapable of expressing herself in an understandable manner or incapable of telling the truth. Indeed, prior to her testimony, the witness was questioned about her understanding of truth versus lie. She demonstrated her ability to distinguish between the two and the importance of telling the truth, and the court found her competent to testify. Defense counsel indicated at that point that he had no objections to that finding.

■ Moreover, the witness was additionally able to testify to personal statistical information, including her name, school attended, teachers, where and with whom she lived, the fact that she was in special education, and the types of classes she took in that program. From the record, it is also evident the witness was also quite responsive at trial, responding to questions by both the prosecution and the defense, and describing in detail the alleged abuse and her initial reports to various individuals. Indeed, on defense objections to the prosecutor's leading questions, the court prohibited such questioning, noting that it was unnecessary where the witness showed an ability to recall and respond to questions and to "be able to articulate quite well."

On this record, we perceive no grounds for determining that this witness' testimony was not entitled to recognition.

## 2. Whether Evidence Was Insufficient for Conviction Where There Was No Rape Kit Evidence.

Appellant additionally argues his conviction was unsupported by sufficient evidence on the record, where there was no physical evidence directly linking him to the crimes.

■ It is well-settled in this jurisdiction that a rape victim's testimony is sufficient evidence on which a guilty verdict may be based, and the absence of corroborative evidence does not preclude conviction. *See Edwards v. Gov't of the Virgin Islands*, 2005 U.S. Dist. LEXIS 34504, 47 V.I. 605, *1 (D.V.I. App. Div. 2005); *Lewis v. Virgin Islands*, 77 F. Supp. 2d 681, 684, 42 V.I. 175 (D.V.I. App. Div. 1999) (citing *Gov't of V.I. v. Peets*, Crim. No. 82-11, slip. op. (D.V.I. Div. St. Thomas & St. John filed Oct. 29, 1982) ("uncorroborated testimony of the victim ... is sufficient evidence for conviction"), *aff'd without opinion*, 215. F.3d 1314 (3d Cir. April 20, 2000).

In *Lewis*, we were faced with the question whether the appellant's rape conviction could stand, where there was no medical evidence of forcible penetration or DNA evidence available. There, we rejected outright the appellant's assertion that corroborative evidence was required, pointing to the legislature's repeal, over 20 years ago, of a statute imposing such a requirement. *Lewis*, 77 F. Supp. 2d at 684. More recently, in *Edwards*, we again upheld a rape conviction involving a child victim, despite the absence of medical evidence directly linking the appellant to that crime. *Edwards v. Gov't of the Virgin Islands*, 2005 U.S. Dist. LEXIS 34504. There, the child victim testified to specific incidences of rape. Although upon examination she was found to be lacking a hymen, indicating sexual activity had occurred, there was no other evidence of trauma to the genital area and no DNA evidence. *See id.* Nonetheless, the child fully testified to several incidents of rape. That testimony, we held, was sufficient evidence supporting the appellant's conviction. *See id.; compare Virgin Islands v. Morris*, 191 F.R.D. 82, 86, 42 V.I. 135 (D.V.I. App. Div. 1999).

In this instance, the appellant was charged with child abuse, under 14 V.I.C. § 505, based on sexual conduct with the victim. That section makes it a crime for anyone to abuse a child or to "knowingly or recklessly cause [ ] a child to suffer physical, mental or emotional injury." 14 V.I.C. § 505. Abuse is defined to include "the infliction of physical, mental or emotional injury upon a child, or maltreatment, sexual conduct with a child, or exploitation of a child by any person." 14 V.I.C. § 503(a). To establish an act of domestic violence under 16 V.I.C. § 99(d), the government was required to establish that the person who was subjected to unlawful sexual contact was a child of the perpetrator or

other person related by blood or marriage, or a member of the same household. *See* 16 V.I.C. §§ 91(b)-(c), 99(d).

██ It was shown at trial that the appellant was related to E.C. and that she lived with him under his care. There was additionally evidence of sexual conduct, not only from the victim, but also from her teacher and others to whom she had reported the abuse. Moreover, there was medical evidence establishing that sexual abuse had also occurred, and the victim identified the appellant as the perpetrator.

Although using terms reflective of her youth to describe what had happened to her, E.C. fully described incidents of sexual intercourse and other sexual contact. *See Morris*, 191 F.R.D. at 88-89 (noting the acceptability and sufficiency of language consistent with the age of the child to describe what occurred). Using dolls, the victim also demonstrated to social workers what had happened to her.

Moreover, medical examinations confirmed that E.C. had suffered repeated sexual abuse, resulting in her having a relaxed genital area resembling that of a sexually active adult, and she named only the appellant as the perpetrator. This was evidence sufficient to support a finding of guilt.

## C. Inconsistency in the Verdicts

██ Appellant next challenges the guilty verdicts for child abuse as inconsistent with the jury's inability to reach a unanimous verdict on the charges of aggravated rape and unlawful sexual contact, in Counts 1 through 8. Appellant argues that the jury's inability to reach a verdict on the earlier counts indicates it was not convinced that the appellant had raped or had sexual contact with E.C. This argument is against the weight of authority on this issue and without merit.

██ It is axiomatic that "consistency in the verdict is not necessary." *Dunn v. United States*, 284 U.S. at 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932); *see also United States v. Powell*, 469 U.S. 57, 58-59, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). As the *Dunn* Court noted, "[e]ach count in an indictment is regarded as if it were a separate indictment." *Id.* at 393 (citations omitted). Therefore, the jury's verdict on one count does not compel a similar verdict on a separate count implicating the same factors, even where they both rely on the same evidence. *Id.*; *see also, United States v. Dolasco*, 184 F.2d 746, 749 (3d Cir. 1950). The jury's inability to reach a verdict on another count in the same charging instrument also

provides no basis for reversal based on inconsistency in the evidence. *See Hamling v. United States*, 418 U.S. 87, 100-01, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974).

The rationale for the well-settled rule that differing results on various counts in an information do not provide grounds for reversal is the recognition that such verdicts may often simply reflect jury compromise or lenity and do not necessarily signal that the jury was not convinced of the accused's guilt. *See Powell*, 469 U.S. at 58-59; *Dunn*, 284 U.S. at 393; *Hamling*, 418 U.S. at 100-01. Moreover, allowing challenges based on inconsistencies in the verdict would invite "speculation or would require inquiries into the jury's deliberations that courts generally will not undertake." *Powell*, 469 U.S. at 66; *United States v. Vastola*, 989 F.2d 1318, 1330-31 (3d Cir. 1993).

Rather, as the appellant recognizes, the central inquiry must remain whether there was sufficient evidence on the record to support the guilty verdict. *See Vastola*, 989 F.2d at 1331 (quoting *Powell*, 469 U.S. at 67). As the *Powell* court noted, the appellant is protected against jury irrationality or error "by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts," which includes an assessment of whether the evidence at trial supported a rational determination of guilt beyond a reasonable doubt. *Powell*, 469 U.S. at 64-67; *United States v. Velasquez*, 885 F.2d 1076, 1091 (3d Cir. 1989); *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005) ("We will not interpret the jury's acquittal on the heroin charge as a rejection of Taylor's testimony, and that testimony clearly provides evidence" of the crime).

In this instance, where the accused was at the time of trial over 70 years old and where he was charged in an 11-count information based on various incidences of sexual conduct with the same victim, it is entirely possible that jury lenity played a big role in this case. Nonetheless, having found the evidence sufficient to support the guilty verdicts for counts 9 and 10, we find no grounds for reversal.

### III. CONCLUSION

Because applicable law does not require that a witness' testimony be disregarded due to her mental retardation, and in the absence of any evidence that the witness was unable to recollect or clearly and understandably testify, this Court rejects the appellant's challenge to her

testimony in that regard. The appellant's further challenge to the insufficiency of the evidence based on lack of physical evidence must also fail. The testimony of the victim was, itself, sufficient to withstand this challenge. We note additionally, however, the existence of medical evidence supporting a finding that repeated occurrences of sexual abuse occurred.

Having found the evidence sufficient to sustain the guilty verdicts, we also reject the appellant's argument that the jury's inability to reach a verdict on the aggravated rape and unlawful sexual contact charges precluded his conviction for child abuse based on the same conduct.

## III. CONCLUSION

In view of the foregoing, the appellant's conviction will be affirmed.