Jeremiah **LYNCH**, Appellant,

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.**

**No. CRIM.APP.2001–118.**

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

July 28, 2003.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and DARRYL DEAN DONOHUE, Judge of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

## I. INTRODUCTION

Jeremiah Lynch appeals his conviction for one count of destruction of property in violation of 14 V.I.C. § 1266 and 16 V.I.C. § 91(b)(9), which constitutes an act of domestic violence.[1] He argues that his Sixth Amendment right to confront his accuser was violated when the only eye-witness to the crime did not appear at trial but the eye-witness's hearsay statements were allowed into evidence. Jeremiah Lynch, however, failed to properly preserve this issue for appeal, and the trial judge's decision to admit this evidence did not constitute plain error. Accordingly, this Court will affirm his conviction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Around two o'clock in the morning on January 23, 1999, Hyacinth George ["George"] was awakened by Jeremiah Lynch ["Lynch" or "appellant"], her former boyfriend and father of her two children, yelling from the street below her apartment window in the Kirwin Terrace housing community. Lynch repeatedly called George's name, but she did not re-

Kathleen Mackay, Mackay & Hodge, St. Thomas, VI, for Appellant.

Maureen Phelan, Assistant Attorney General, V.I. Department of Justice, St. Thomas, VI, for Appellee.

1. Title 14, section 1266 punishes "[w]hoever maliciously injures or destroys any real or personal property not his own." 14 V.I.C. § 1266. Under 16 V.I.C. § 91(b)(9), an act of "domestic violence" includes the destruction of property by "a person with whom the victim has a child in common, or a person who is, or has been, in a sexual or otherwise intimate relationship with the victim."

spond. Lynch eventually drove off. (J.A. at 17–18, 27.)

Later that day, at approximately six o'clock in the morning, George was talking on the telephone to her fiancé, Horace Peetes ["Peetes"], who lived in the Donoe housing community. While on the telephone with Peetes, she heard in the background Glenford Allen ["Allen"], Peetes's roommate, tell Peetes that someone was smashing up a green car. (*Id.* at 18–19.) George remained on the phone while Peetes went to investigate. When he returned, he informed George that someone had smashed up her car, which she had lent to Peetes. (*Id.* at 20.) When George arrived at the scene, she observed that the four windows and the front windshield of her car were shattered, the hood was dented, and the right headlight was broken. (*Id.* at 21–23.)

Lynch was subsequently arrested and charged with damaging George's vehicle. Lynch's trial date was twice continued because Allen was incarcerated in Tortola and was unavailable to testify as a government witness. On September 3, 1999, the third scheduled date of Lynch's trial, the government again requested a continuance, arguing that Allen would be released from custody within one week. The trial judge denied the request, and stated that she would hear Allen's testimony after his release. (*Id.* at 8–9.) At trial, George testified that, upon seeing her car, she asked Allen whether he saw anyone near her car, to which he responded, "yes, a guy in a blue Cherokee pull [sic] up" and described the man as "short [and] husky." George testified that "automatically I knew it was Jeremiah." (*Id.* at 21.) In addition, Virgin Islands police officer Celeste Christopher ["Christopher"] testified that Allen picked Lynch out of a photo array lineup as the individual who smashed George's vehicle. (*Id.* at 35–36.) Lynch did not object to either George's or Chris-

topher's testimony. Instead, he asked both witnesses detailed questions concerning Allen's statements and selection of Lynch from the photo array. (*See generally id.* at 21–27, 35–37.)

George stated that Lynch drove a blue four-door jeep "wagoneer" that resembled a Jeep Cherokee. (*Id.* at 16, 32.) In addition, she testified that the appellant knew where Peetes lived, and that he knew that she and her fiancé would be attending a formal ball on the evening of January 23, 1999. (*Id.* at 24.) George described to the Court how Lynch had contacted her and asked her to meet him. When she did, Lynch told George that if she dropped the case against him, he would repair her car. Lynch told George that he could not afford to have his money tied up in his bail. George declined Lynch's offer. (*Id.* at 24–26.) Officer Christopher also testified that Lynch told her that "he had called [George] and he tried to make restitution … for her vehicle, but she wouldn't compromise—she wasn't willing to compromise with him." (*Id.* at 40.)

On September 13, 1999, the court convened to hear the testimony of Allen. The government informed the trial judge, however, that Allen was still in prison in Tortola and would likely remain there for a couple of months. At this point, the government rested, and Lynch moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), arguing that the government had not proven its case beyond a reasonable doubt because the only eyewitness to the crime, Allen, did not testify. (*Id.* at 104–07.)

The trial judge denied the motion, and found Lynch guilty of one count of destruction of property, that, because of the relationship between the appellant and George, constituted an act of domestic violence. She found that Lynch was "very

angry and jealous" and that he knew where George's fiancé lived. The judge found that Lynch "took out a chrome object and began smashing [George's] vehicle." (*Id.* at 120–21.) In addition, the judge found that Allen identified Lynch from a photo lineup. (*Id.* at 122.) Finally, the trial judge found that the appellant met with George and offered to repair her car if she would drop her case against him, and that Lynch told Officer Christopher that he had offered to fix the vehicle. (*Id.*)

The following day, Lynch moved for judgment notwithstanding the verdict, and argued that the trial judge erred in refusing to dismiss the case when "the Government failed to produce its chief witness Glenford Allen, although the court stated after two continuances, that if the Government could not produce Mr. Allen that the matter would be dismissed." (*Id.* at 125–26.) He averred that the judge's factual findings were "clearly erroneous" in light of Allen's failure to testify. (*See id.*) Lynch did not raise a Sixth Amendment claim in either his Rule 29 motion or in his motion notwithstanding the verdict. In denying his motion, the trial judge reiterated her findings of fact and noted that she "had the hearsay testimony of Mr. Glenford Allen. A lot of hearsay came in as to what Mr. Allen said that was not objected to, and therefore the Court considered it." (*Id.* at 138.) Nevertheless, she concluded that the direct and circumstantial evidence before her established Lynch's guilt beyond a reasonable doubt. (*Id.* at 139.) He was subsequently sentenced to three months' incarceration, all of which was suspended. (*Id.* at 3.)

**2.** The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. Code Ann. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. Code Ann. tit. 1).

## III.  DISCUSSION

### A.  Jurisdiction

This Court has jurisdiction to review final judgments and orders of the Territorial Court in criminal cases. *See* 4 V.I.C. § 33; Section 23A of the Revised Organic Act.[2]

### B.  The Trial Judge Did Not Commit Plain Error in Admitting Testimony Concerning Allen's Statements

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to confront the witnesses against him. U.S. CONST. amend. VI.[3] The Confrontation Clause "is designed to prevent an accused from being convicted on the basis of testimony given out-of-court, without the benefit of a personal examination and cross-examination of the witness." *United States v. Caputo,* 758 F.2d 944, 950 (3d Cir.1985), *vacated on other grounds,* 791 F.2d 37 (1986).

Lynch urges this Court to vacate his convictions, arguing that the admission of Allen's statements without the opportunity to cross-examine him constituted plain error and prejudiced him. Lynch, however, concedes that he did not contemporaneously object to the testimony of George and Christopher regarding Allen's statements to them. (Blue Br. at 15.) The government responds that Lynch has waived his right to challenge these statements under a "plain error" standard, because not only did he fail to object to this hearsay evidence during trial, but he elicited it in even more detail on cross-examination.

**3.** The Sixth Amendment applies to Virgin Islands Courts through section 3 of the Revised Organic Act of the Virgin Islands, codified at 48 U.S.C. § 1561.

Because the appellant did not preserve his Sixth Amendment argument, this Court reviews his claim for plain error under Federal Rule of Criminal Procedure 52(b). Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b). Plain error is defined as those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Sanchez v. Government of the Virgin Islands*, 921 F.Supp. 297, 300 (D.V.I.App.Div.1996) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). They are errors that "undermine fundamental fairness of the trial and contribute to a miscarriage of justice." *Id.* (quoting *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). Application of the plain error doctrine, however, "is to be used sparingly and only where the error was sure to have had an 'unfair prejudicial impact on the jury's deliberations.'" *Id.*

The record clearly reflects that Lynch did not raise a Sixth Amendment challenge to the admission of Allen's alleged statements. He did not object contemporaneously to the admission of Allen's statements on either a Confrontation Clause or Federal Rules of Evidence basis. Moreover, he failed to make this argument in either his Rule 29 motion for acquittal or in his motion for judgment notwithstanding the verdict. He did not, therefore, preserve this issue for appeal, and it cannot serve now as a basis to reverse his conviction.

Here, the trial judge's consideration of Allen's hearsay comments do not constitute plain error, as there was ample direct and circumstantial evidence from which she could have concluded that Lynch damaged his ex-girlfriend's car. First, George testified that she saw Lynch outside her bedroom window early on the morning on which her car was damaged. George's testimony established that Lynch knew where her fiance's house—and her car—were. Most convincingly, George testified that Lynch had approached her and had offered to repair her vehicle if she would drop the charges against him, and Officer Christopher corroborated this account. In addition, Christopher testified that Allen picked the appellant out of a photo lineup. Furthermore, during cross-examination, Lynch's attorney elicited additional details about Allen's comments to George and detective Christopher. The appellant cannot strategically attempt to use hearsay evidence to his advantage at trial, and now argue that this evidence violated his Sixth Amendment rights. The admission of this evidence, in light of the trial as a whole, did not "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Sanchez*, 921 F.Supp. at 300. Accordingly, we conclude that the trial judge did not commit plain error in considering the hearsay testimony in Lynch's trial, and will affirm his convictions.

## IV. CONCLUSION

A review of the record, transcripts, and the parties' briefs indicates that the trial judge did not commit plain error in admitting the testimony concerning Allen's statements. Moreover, these comments, when considered in light of the trial as a whole, did not contribute to a miscarriage of justice. Accordingly, this Court will affirm his convictions.

## ORDER

For the reasons given in the accompanying Memorandum Opinion of even date, it is hereby **ORDERED** that Lynch's convictions of destruction of property, 14 V.I.C.

§ 1266, and domestic violence, 16 V.I.C. § 91(b)(9), are **AFFIRMED.**