**JASON WOODS, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2004-88

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 18, 2006

419

DAVID J. CATTIE, ESQ., St. Thomas, U.S.V.I., *For the appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For the appellee.*

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## Memorandum Opinion

(August 18, 2006)

Jason Woods ["Woods"] appeals from his conviction in the Superior Court of the Virgin Islands[1] on two counts of third degree assault in violation of title 14, section 297 of the Virgin Islands Code, and one count of using a dangerous or deadly weapon in violation of title 14, section 2251 of the Virgin Islands Code.

## I. FACTS

This matter stems from an incident between Woods and Dwight Rouse ["Rouse"]. On the evening of February 10, 2003, Rouse was walking home through Emile Griffith Park on St. Thomas, Virgin Islands

---

[1] At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

["Griffith Park"]. Near the baseball field, Rouse saw Woods and two unidentified men sitting on a wall.[2]

Woods and the two men approached Rouse. Woods had an aluminum baseball bat in his hand. Rouse began to run away, and he either fell or was pushed to the ground and injured his knee. Woods then swung the baseball bat at Rouse, striking him and shouting "I'm going to kill you." Rouse blocked the blows from the baseball bat with a raised hand. Woods struck Rouse three or four times before Rouse was able to get off the ground and flee from the park. After Rouse fled the park, Woods left the vicinity.

Later that evening, the Virgin Islands Police Department ["VIPD"] took Rouse to the Roy Lester Schneider Hospital on St. Thomas [the "Hospital"]. Hospital staff treated Rouse for injuries to his knee. Rouse told the treating physician that he received his injuries during an altercation wherein he fell on some steps. While at the Hospital, Rouse was questioned by VIPD Detective Albion George. Rouse told Detective George that Woods had assaulted him with an aluminum baseball bat at Griffith Park.

On May 7, 2003, Detective George arrested Woods. Woods made no statements at the time of, or immediately following, his arrest. The record is devoid of any indication as to whether Woods was read his *Miranda* warnings at the time of his arrest.

Detective George of the VIPD testified at Woods' trial about what Rouse had told him when he visited Rouse at the Hospital. In response to questions from the prosecution, Detective George testified that Woods had not made any statements following his arrest. The prosecutor subsequently asked Woods whether he had told anyone about Rouse's knife. Woods replied that he told his attorney. During closing arguments, the prosecutor noted that Woods had not told anyone, aside from his defense attorney in preparation for trial, that Rouse had possessed a knife during the incident. The prosecutor described Woods' statement about the knife to his attorney as a recent fabrication. The prosecutor also stated that he believed that Woods was lying. Woods' attorney did not object to any of these questions or comments.

Woods testified on his own behalf. He stated that Rouse approached him on the night of February 10, 2003. He testified that, due to previous

---

[2] Rouse testified later that he knew Woods because both men are from St. Kitts.

altercations between Woods and Rouse on St. Kitts, Woods believed that Rouse intended to injure Woods. Woods testified that when he saw Rouse, Rouse had a knife in one hand. Woods stated that he then picked up an aluminum baseball bat from a nearby softball game. Woods claimed that when Rouse drew near to Woods, Woods swung the aluminum bat at Rouse twice and hit Rouse's hand. He testified that these blows resulted in Rouse losing the knife he had been holding. Woods stated that he swung the bat at Rouse a third time before Rouse fled. Woods stated that Rouse fell at least twice during his flight. After Rouse fled, Woods dropped the bat and left the park.

On cross-examination, the prosecutor asked Woods if he had told anyone else about Rouse's knife. Woods stated that he had told his attorney, but no one else, about the knife he alleged that Rouse was carrying on the night of the incident.

The jury found Woods guilty of all three counts against him. Woods timely appealed.

On appeal, Woods asserts that: (1) there was insufficient evidence below to sustain his convictions; (2) the Superior Court committed plain error by permitting hearsay evidence to be introduced; (3) the Superior Court erred by failing to prohibit the prosecutor from remarking on Woods' post-arrest silence; (4) the prosecutor's conduct during the trial merits reversal; and (5) Woods' trial counsel was ineffective because he failed to raise proper objections.

## II. DISCUSSION

This Court has jurisdiction to review final judgments and orders of the Superior Court. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004) which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court);[3] Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a. The trial court's conclusions of law are subject to plenary review. *Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984). Findings of fact are reviewed for whether they are clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). If no contemporaneous objections were made to an issue raised on appeal, then the challenged issue is reviewed

---

[3] Our jurisdiction in this regard was previously provided under 4 V.I.C. § 33.

for plain error. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); FED. R. CRIM. P. 52(b).

## III. ANALYSIS

### A. Sufficiency of the Evidence

Woods first argues that the trial court erred in denying his motion for acquittal because the government did not provide sufficient evidence at trial to show that the baseball bat constituted a deadly weapon for the purposes of third degree assault. He argues that the bat was not a deadly weapon because he did not strike Rouse with sufficient force.

When reviewing a motion for acquittal based on the sufficiency of the evidence, the Court must view the evidence in a light most favorable to the government and determine whether a jury could find guilt beyond a reasonable doubt. *Sanchez v. Government of the Virgin Islands*, 921 F. Supp. 297, 299, 34 V.I. 105 (D.V.I. App. Div. 1996). The Court must ask whether the evidence presented at trial would allow a rational trier of fact to find the defendant guilty of every element of the offense beyond a reasonable doubt. *Phipps v. Gov't of the V.I.*, 241 F. Supp. 2d 507, 510-11 (D.V.I. App. Div. 2003). "We must ... presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences." *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992).

Under Virgin Islands law, a person commits third degree assault when he "assaults another with a deadly weapon; [or] assaults another with premeditated design and by use of means calculated to inflict great bodily harm." 14 V.I.C. § 297. Virgin Islands law also prohibits the unlawful use of knives, knuckles, bludgeons, or "any other dangerous or deadly weapon" against another individual. 14 V.I.C. § 2251(a)(2). Thus, to meet its burden at trial, the government had to show beyond a reasonable doubt that Woods: (1) possessed a "deadly or dangerous weapon;" and (2) struck Rouse with it. *Phipps*, 241 F. Supp. 2d at 511.

■ The term "deadly or dangerous weapon" is not defined under Virgin Islands law. However, in reviewing the Virgin Islands' "excusable-homicide" law, which includes the term "dangerous weapon," the United States Court of Appeals for the Third Circuit held that:

A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury. Thus whether a weapon is deadly depends upon two factors: (1) what it intrinsically

423

is and (2) how it is used. If almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill. Thus the following items have been held to be deadly weapons in view of the circumstances of their use: ... iron bars, baseball bats, bricks, rocks, ice picks, automobiles, and pistols used as bludgeons.

*Government of the Virgin Islands v. Robinson*, 29 F.3d 878, 886, 30 V.I. 428 (3d Cir. 1994) (holding that a person who swings a two-by-four piece of wood at another individual uses a deadly weapon) (citing WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., 537 HANDBOOK ON CRIMINAL LAW (1972) and California, Florida and Mississippi statutes defining "deadly weapon").

Applying this definition, this Court has upheld a conviction for third degree assault where the appellant struck a victim with a crowbar. *Phipps*, 241 F. Supp. 2d at 510. However, a weapon need not actually connect with a victim to be considered deadly. *See United States v. Johnson*, 199 F.3d 123, 126 (3d Cir. 1999) (noting that "when a baseball bat is carried into the scene of a robbery, and employed to threaten bystanders, [it] just as clearly becomes [a] dangerous [weapon]").

■ Here, it is uncontested that Woods struck Rouse with an aluminum baseball bat at least three times; once while Rouse was unarmed. While Woods did not inflict serious bodily injury on Rouse with the baseball bat, the jury nonetheless could have reasoned that by swinging the bat at Rouse, Woods used the bat in a manner calculated to cause bodily injury such that the bat constituted a deadly weapon. *See, e.g., Johnson*, 199 F.3d at 126 (finding that a baseball bat used in a robbery constituted a deadly weapon even though the bat was not used to strike any person).[4]

---

[4] Woods' argument that a weapon must be wielded with force sufficient to actually cause injury is without merit. Under Woods' rationale, a weapon would only be considered deadly when serious harm resulted from a defendant's use. However, a weapon need not cause actual injury to be considered a deadly weapon for purposes of assault with a deadly weapon. *See, e.g., Dammons v. Carroll*, 340 F. Supp. 2d 628, 634-35 (M.D.N.C. 2004) (rejecting an argument that actual impairment is required to sustain a verdict of guilty for assault with a deadly weapon in North Carolina); *Graves v. Yates*, No. CIV S-03-2607, 2005 U.S. Dist. LEXIS 29355, at *24-28 (E.D. Cal. July 1, 2005) (citing California caselaw stating that where a person uses a deadly weapon in an assault, "whether the victim in fact suffers any harm is immaterial"); *People v. Parks*, 4 Cal. 3d 955, 95 Cal. Rptr. 193, 485 P.2d 257, 259 (1974) (upholding jury instruction that "[t]o constitute an assault with a deadly weapon, actual injury need not be caused").

Given the evidence presented at trial, a jury could have found Woods guilty of third-degree assault beyond a reasonable doubt.

## B. Self-Defense

At trial, Woods invoked self-defense as a basis for his actions. On appeal, Woods argues that the government failed to prove beyond a reasonable doubt that Woods had not acted in self-defense.

■ "[O]nce the defendant has properly placed self-defense in issue, the prosecution must prove its absence beyond a reasonable doubt." *Government of Virgin Islands v. Smith*, 949 F.2d 677, 680, 27 V.I. 332 (3d Cir. 1991).

■ At trial, Rouse testified that he did not have a knife, and that Woods had swung the baseball bat at Rouse without provocation. "If the jury accepts the statement of one witness over another statement of even more than one witness it is no ground for us to interfere with its conclusion unless it is so inherently improbable that no reasonable man could take it." *Biggs v. Pub. Serv. Coordinated Transport*, 280 F.2d 311, 314 (3d Cir. 1960). Viewing this evidence in a light most favorable to the government, a reasonable jury could have concluded that Rouse was unarmed and did nothing to provoke Woods to swing a baseball bat at him.[5] *See Sanchez*, 921 F. Supp. at 299-300 (upholding a conviction for involuntary manslaughter where the evidence at trial, including eyewitness testimony, was sufficient to show that the appellant had not acted in self-defense). Accordingly, the trial court did not err in denying Woods' motion for acquittal based on his self-defense theory.

## C. Hearsay Evidence

Woods next argues that the Superior Court committed plain error by allowing Detective George to testify about what Rouse told him when George visited Rouse in the hospital. A verdict or judgment shall not be

---

[5] Woods' argument that the evidence was insufficient to sustain his conviction because the government presented no witnesses other than the victim is without merit. Here, the jury chose to believe the statements of Rouse over those of Woods. *See Gov't of the V.I. v. Peters*, 121 F. Supp. 2d 825, 830 (D.V.I. App. Div. 1998) (noting that the credibility and weight that is attached to witnesses are matters left to the jury); *see also Biggs*, 280 F.2d at 314 (holding that a jury's decision to accept the testimony of one witness rather than others is not grounds for reversal). Accordingly, this Court will not disturb that decision.

set aside or reversed "by reason of the erroneous admission of evidence unless [ ] there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." 5 V.I.C. § 774. Because Woods did not object to the admission of Detective George's statement, this matter is reviewed for plain error. *Lynch v. Gov't of the V.I.*, 273 F. Supp. 2d 686, 690 (D.V.I. App. Div. 2003) (reviewing admission of hearsay testimony for plain error where the appellant did not object to the testimony at trial). "Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Schneble v. Fla.*, 405 U.S. 427, 431, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1976).

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and [generally] inadmissible." 5 V.I.C. § 932.

Detective George testified about what Rouse had told him about the February 10, 2002, incident. This testimony was hearsay. *See, e.g., McBride v. Johnson*, 118 F.3d 432, 433 (5th Cir. 1997) (noting that a "police officer's testimony as to what the alleged victim of the sexual assault told the officer" was hearsay). However, "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter" is excepted from the hearsay rule if the statement "would be admissible if made by declarant." 5 V.I.C. § 932(1).

Detective George's testimony merely reiterated remarks made by Rouse, who was present at and who testified at Woods' trial. Had Rouse testified about what he told Detective George, the testimony would have been admissible. Thus, the previous statements of a person present and subject to cross examination exception to the hearsay rule applies to Detective George's testimony. Accordingly, the trial court did not err in allowing Detective George to testify about what Rouse had told him at the Hospital.

## D. Post-Arrest Silence

Woods also argues that the prosecutor unconstitutionally commented upon his post-arrest silence regarding his self-defense theory. The prosecutor asked both Woods and Detective George whether Woods had stated that Rouse had a knife.

■ Generally, a criminal defendant may not be cross examined about his post-arrest silence "because its prejudicial effect substantially outweighs its probative value." *United States v. Johnson*, 302 F.3d 139, 146 (3d Cir. 2002). Thus, the United States Supreme Court has held that a prosecutor's questions or remarks about a defendant's post-arrest silence violate the defendant's due process protections. *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

■ However, "the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Id.* at 619 n.11 (1976). Additionally, a defendant's silence after his arrest, but before he receives his *Miranda* warning may be used to impeach a testifying defendant. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982) ("In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand.").

■ Courts have used a five-factor analysis when addressing alleged *Doyle* violations. These factors include: (1) how the prosecution used the defendants silence; (2) who initiated the questioning on the silence; (3) the quantum of other evidence of guilt; (4) the intensity and frequency of the references; and (5) whether the trial court issued curative instructions. *See, e.g., Vick v. Lockhart*, 952 F.2d 999, 1002 (8th Cir. 1991); *see also Williams v. Zahradnick*, 632 F.2d 353, 361-62 (4th Cir. 1980).

At trial, the prosecutor asked Detective George:

> Q: When you arrested [Woods], did he make any statements to you?
>
> A: No, he didn't.

[J.A. 78: 14-16.]

Later, when the prosecutor questioned Woods, he asked:

> Q: Did you ever tell anyone about a knife, you saw a knife on Mr. Rouse that night? Did you tell anyone?
>
> A: Yes, Mr. Robert Leycock [Woods' attorney].

Q: When did you tell him that?

A: While I was in BOC. While I was incarcerated.

[J.A. 129: 5-12.]

Finally, during his closing arguments, the prosecutor stated:

> [When Woods] was on the stand ... [h]e said or he claims that Dwight Rouse attacked him with a knife. And I asked him, did you ever tell anybody about that? He said, oh, well, I told my attorney ... When I asked him, did you tell anybody about this matter of [Rouse] assaulting him or pulling a knife, rather, on him, he said his attorney. And I think if he had told the police, if he had filed a police report, he would have mentioned that. He didn't mention that. He didn't file a police report. Why not? Why not? But he tells his attorney sometime recently in preparation for trial. You know, Ladies and Gentlemen, what we call that? We call that a recent fabrication.

[*Id.* at 204-206.]

These questions, along with the closing statement, are similar to other questions that have been found to violate a defendant's due process protections under *Doyle. See, e.g., Hassine v. Zimmerman*, 160 F.3d 941, 947-48 (3d Cir. 1998) (holding that questioning a defendant three times about whether he had told anyone about his alibi after his arrest was improper under *Doyle*); *see also United States ex rel. Allen v. Franzen*, 659 F.2d 745, 747 (7th Cir. 1981) (holding that a prosecutor's comments regarding a defendant's failure to tell police officers that he acted in self-defense violated the defendant's due process rights). The prosecutor used the questions and comments regarding Woods' post-arrest silence to cast doubt on his claim of self-defense. Additionally, the questioning was initiated by the prosecutor, who first asked Detective George about Woods' post-arrest silence, and was not objected to by the defendant.

The prosecutor's question to Detective George regarding Woods' post-arrest silence thus violated the proscription against such comments laid out in *Doyle*. Accordingly, it was error for the trial court to permit these questions and closing statements. *See United States v. Balter*, 91 F.3d 427, 439 (3d Cir. 1996) (suggesting that a prosecutor's comments regarding a defendant's post-arrest silence violated *Doyle*).

*Doyle* errors are considered "trial errors," and are reviewed for whether they are harmless. *Hassine*, 160 F.3d at 949 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Trial error[s] ... may be quantitatively assessed in the context of all other evidence." *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996). Thus, to be reversed, "this Court must determine beyond a reasonable doubt that the error did not contribute to the verdict." *Soldiew v. Government of the Virgin Islands*, 30 V.I. 112, 117 (D.V.I. App. Div. 1994) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).

The Court is deeply troubled with the government's conduct here, which is beneath the level of propriety expected of the government. *See Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (noting "the special role played by the American prosecutor in the search for truth in criminal trials"); see also *United States v. Pellot*, Nos. 00-1615; 00-1639; 00-1641, 43 Fed. Appx. 473, 2002 U.S. App. LEXIS 15429, at *4-5 (3d Cir. July 31, 2002) (unpublished) (noting "the high standard of professional conduct to which [government prosecutors] ... must adhere"). Nonetheless, this Court concludes that the error was harmless. The jury had before it the testimony of Rouse that Woods attacked him without provocation. Woods admitted that he struck Rouse with a baseball bat. Rouse also testified that he did not have a knife on him at the time of the assault.

 Based on the evidence adduced at trial, without the comments objected to here, the jury could have determined that Woods did not act in self-defense when he struck Rouse with an aluminum baseball bat. *See, e.g., Balter*, 91 F.3d at 440 (finding that a *Doyle* error was not harmless beyond a reasonable doubt where sufficient evidence in support of the guilty verdict was presented at trial); *see also United States v. Rodriguez*, 43 F.3d 117, 123 (5th Cir. 1995) (holding that a prosecutor's questions to the defendant about his post-arrest silence, which did not refer to a specific time period, were harmless error). Thus, while the Court does not approve of the prosecutor's questions and comments about Woods' post-arrest silence, the *Doyle* violation does not rise above the level of harmless error.

## E. Closing Argument Commentary

Woods argues that by stating during closing that he did not believe Woods' account of the events of February 10, 2003, the prosecutor improperly attacked Woods' credibility. Because Woods made no contemporaneous objection to the alleged prosecutorial misconduct, this Court reviews for plain error. *United States v. Brennan,* 326 F.3d 176, 182 (3d Cir. 2003). "In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal 'egregious error or a manifest miscarriage of justice.'" *United States v. Brown,* 254 F.3d 454, 458 (3d Cir. 2001) (quoting *United States v. Price,* 76 F.3d 526, 530 (3d Cir. 1996)).

■ Generally, it is improper for a prosecutor "to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant." *Government of Virgin Islands v. Joseph,* 770 F.2d 343, 349 (3d Cir. 1985) (quoting *Standards Relating to the Prosecution Function* § 3-5.8(b) (1979)). However, "such expression is not reversible error when the remarks fairly construed refer only to belief based on the evidence and not to an opinion formed from facts not in evidence." *United States v. Le Fevre,* 483 F.2d 477, 479 (3d Cir. 1973) (quoting *United States v. Schartner,* 426 F.2d 470, 477 (3d Cir. 1970)).

The prosecutor stated that he did not believe Woods based on the evidence adduced at trial.[6] The prosecutor's comments regarding his disbelief of Woods' account of the events were confined to the record. *See Joseph,* 770 F.2d at 349 (upholding a conviction despite the prosecutor's statement during closing that he did not believe the defendant's testimony because the statement was based on evidence adduced at trial). Accordingly, the trial court did not commit plain error by allowing the prosecutor's statement that he did not believe Woods.

## F. Ineffective Assistance of Counsel

Finally, Woods argues that because his trial counsel failed to object to the statements and testimony Woods now challenges, Woods was ineffectively assisted by counsel at trial.

---

[6] Specifically, the prosecutor stated that "I submit to you [ladies and gentlemen of the jury], think about what you've heard. We believe Dwight Rouse is telling the truth, and we don't believe that Jason Woods is telling the truth." [J.A. 206: 5-9.]

It is well-settled that "Sixth Amendment ineffective assistance of counsel claims ... are generally not entertained on direct appeal." *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004). This practice stems from the reality that "such claims frequently involve questions regarding conduct that occurred outside the purview of the district court and therefore can be resolved only after a factual development at an evidentiary hearing." *Id.* In rare cases, the Court may address the claim on direct appeal when the record is sufficient to allow a determination on the issue. *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984); *but see Massaro v. United States*, 538 U.S. 500, 507, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (noting that few ineffective assistance claims "will be capable of resolution on direct appeal").

 The record here is not sufficiently compelling to address Woods' ineffective assistance claims. *See Massaro*, 538 U.S. at 505 (noting that because evidence produced at trial is devoted to a defendant's guilt or innocence, the resultant record is inadequate to assess trial counsel's performance). Accordingly, this Court will defer Woods' claim of ineffective assistance of counsel without prejudice so that he may raise this issue at a collateral hearing. *See, e.g., United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003) ("It has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack.").

## IV. CONCLUSION

For the reasons stated above, this Court will affirm Woods' conviction and sentence.