OPINION OF THE COURT
FUENTES, Circuit Judge:
Appellant Melvin Pitts was convicted of offenses relating to the armed robbery of the Tropicana Lounge, a bar located in Philadelphia, Pennsylvania. At trial, the government’s case included the testimony of eyewitnesses who identified Pitts as one of the three individuals involved in the robbery. Prior to trial, Pitts, who had appointed counsel pursuant to the Criminal Justice Act (“CJA”), filed an ex parte motion for the services of an expert witness, arguing that he was entitled to funds for an expert on eyewitness identification. The District Court denied the motion. Following the trial and conviction, the District Court sentenced Pitts to, inter alia, 210 months’ imprisonment. On appeal, Pitts challenges the District Court’s denial of his ex parte motion for funds to hire an expert witness on eyewitness identification. For the reasons that follow, we will affirm the District Court.[1]
I.
Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for the resolution of the case.
On April 19, 2007, a grand jury returned an Indictment against Pitts charging him with (1) conspiracy to commit robbery which interfered with interstate commerce, in violation of 18 U.S.C. § 1951; (2) interference with interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2; and (3) carrying a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2. Specifically, the Indictment charged Pitts with participating in the July 24, 2006 armed robbery of the Tropicana Lounge. Present at the Tropicana Lounge during the robbery were five individuals including Juanita Rouse, the manager of the bar; Michael Miller, the owner of the bar; and Albert Campbell, a patron who did odd jobs for the bar and was helping to prepare for opening. Both Rouse and Campbell identified Pitts as one of the robbers. Miller, who knew Pitts as one of his customers, did not identify him as a participant in the robbery.
On April 3, 2007, the District Court deemed Pitts to be indigent and appointed *841 counsel for him pursuant to the Criminal Justice Act (“CJA”), 18 U.S.C. § 3006A. On August 22, 2007, Pitts filed an Ex Parte Motion for Expert Witness Services, seeking CJA funds to retain an expert witness on eyewitness identification. According to Pitts, following the filing of his motion the District Court held a meeting in chambers with Pitts’s counsel and Assistant United States Attorney Curtis Douglas to discuss the request for CJA funds. This meeting is not reflected in the District Court docket, and the record on appeal contains no memorialization of what occurred during the meeting. On October 9, 2007, in a written Memorandum and Order, the District Court denied Pitts’s ex paiie motion for the services of an expert witness.
Pitts’s trial began on February 11, 2008; three days later, the jury found Pitts guilty on all three counts of the Indictment. The District Court sentenced Pitts to, inter alia, 210 months’ imprisonment. Pitts filed a timely appeal; he challenges only the District Court’s denial of his ex parte motion for expert witness services.[2]
II.
Pitts argues that the District Court erred in denying his ex parte motion and that this erroneous denial violated his constitutional rights to due process, to a fair trial, and to equal protection. We review a district court’s decision to grant or deny a motion under 18 U.S.C. § 3006A(e)(l) for funds to hire an expert witness for abuse of discretion. United States v. Roman, 121 F.3d 136, 143 (3d Cir.1997).
The CJA provides, in relevant part:
Counsel for a person who is financially unable to obtain investigative, expert, or Other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.
18 U.S.C. § 3006A(e)(l). When evaluating a motion for the services of an expert witness under § 3006A(e)(l), before addressing the question of necessity, “a court should first ‘satisfy itself that a defendant may have a plausible defense.’ ” Roman, 121 F.3d at 143 (quoting United States v. Alden, 767 F.2d 314, 318 (7th Cir.1984)) (emphasis added in Roman). The District Court did so here, concluding that, given the circumstances, Pitts’s defense of mistaken identity was plausible.
By the plain text of § 3006A(e)(1), before authorizing expert witness funds, the District Court must find that such services are “necessary for adequate representation.” “A test commonly used” to assess necessity “is the ‘private attorney’ standard” — whether “ ‘a reasonable attorney would engage such services for a client having the independent financial means to pay for them.’” Alden, 767 F.2d at 318 (quoting United States v. Bass, 477 F.2d 723, 725 (9th Cir.1973)) (further citation omitted); accord United States v. Chase, 499 F.3d 1061, 1066 (9th Cir.2007). The burden of establishing necessity rests on the defendant requesting the services. United States v. Kennedy, 64 F.3d 1465, 1470 (10th Cir.1995); United States v. Sanchez, 912 F.2d 18, 22 (2d Cir.1990). Moreover, to meet this burden, “a defendant must demonstrate with specificity, *842 the reasons why such services are required.” United States v. Gadison, 8 F.3d 186, 191 (5th Cir.1993) (emphasis in original) (citation omitted). In the particular context of a expert on eyewitness testimony, as “[a]ny weaknesses in eyewitness identification testimony can ordinarily be revealed by counsel’s careful cross-examination of the eyewitnesses,” the defendant must establish why such cross-examination is inadequate and why an expert is required. United States v. Labansat, 94 F.3d 527, 530 (9th Cir.1996).
In the instant case, the District Court correctly stated the legal standard for ruling on a motion for expert witness services pursuant to § 3006A(e)(l). The Court denied Pitts’s motion on the ground that “Pitts does not explain why this expert’s testimony is necessary to his defense, nor does he state why cross-examination will be inadequate.” In his motion papers, Pitts merely listed the types of testimony that the expert witness would offer — e.g., “the manner in which memory functions,” “the confidence of an eyewitness in his identification being unrelated to the accuracy of the identification,” and “the inverse relationship of stress and accuracy of information” — without explaining precisely how such testimony would be relevant to the particular eyewitness identifications at issue. (App. 17-18.) For example, Pitts stated that an eyewitness expert could testify about “the conformity effect[,] which is when a witness’ memory is altered by talking about the event with [another witness] after it occurred,” but he did not provide any facts suggesting that the eyewitnesses in his case had spoken to each other, making them susceptible to such a “conformity effect.” (Id.)
Addressing the question of whether Pitts had demonstrated a specific necessity for the requested expert testimony, the District Court stated that “Pitts does not offer that the expert will address the United States’ eyewitness specifically.” On appeal, Pitts takes issue with this statement, arguing that “[o]bviously the proposed expert testimony ... would serve to directly challenge and rebut the identifications that were expected to be made by one or two of the [g]overnment witnesses at trial.” (Appellant’s Br. 12 n. 1.) While such an inference — that the proffered expert testimony would be used to impeach the eyewitness testimony offered at trial — may fairly be drawn in favor of Pitts, this is insufficient to meet Pitts’s burden to establish a specific necessity for an eyewitness expert.[3] Accordingly, we conclude that the District Court did not abuse its discretion in denying Pitts’s ex parte motion for the services of an expert witness.
In his brief on appeal, Pitts relies on a series of three cases from this court in support of his argument that the District Court erroneously denied his ex parte motion in violation of his due process and fair trial rights: United States v. Brownlee, 454 F.3d 131 (3d Cir.2006); United States v. Stevens, 935 F.2d 1380 (3d Cir.1991); United States v. Downing, 753 F.2d 1224 (3d Cir.1985). This precedent, however, does not help Pitts. Each of these cases discusses the admissibility of expert eyewitness testimony, not the question of whether a defendant may receive CJA funding to hire such an expert. See Brownlee, 454 F.3d at 140-44; Stevens, 935 F.2d at 1397-1401; Downing, 753 F.2d at 1226-27. Moreover, these cases hold that “ ‘admission [of eyewitness expert tes *843 timony] depends upon the “fit,” ie., a specific proffer that the testimony will focus on particular characteristics of the eyewitness identification at issue and discuss how those characteristics call into question the reliability of the identification.’ ” Brownlee, 454 F.3d at 143 (quoting United States v. Sebetich, 776 F.2d 412, 419 (3d Cir.1985)). To establish admissibility, the following burden applies:
[A] defendant who seeks the admission of expert testimony must make an on-the-record detailed proffer to the court, including an explanation of precisely how the expert’s testimony is relevant to the eyewitness identifications under consideration. The offer of proof should establish the presence of factors (e.g., stress, or difference in race or age as between the eyewitness and the defendant) which have been found by researchers to impair the accuracy of eyewitness identifications.
Id. (quoting Downing, 753 F.2d at 1242) (emphasis added). Pitts’s motion papers presented to the District Court failed to include such an explanation; thus, Pitts did not meet the burden to establish admissibility of expert eyewitness testimony, let alone eligibility for CJA funding for such an expert.[4]
III.
For the foregoing reasons, we affirm the District Court’s denial of Pitts’s Ex Parte Motion for Expert Witness Services.

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. We note with concern the inappropriate language in the Appellant’s brief characterizing one of the District Court’s assertions as “absurd” and "disingenuous.” We have carefully reviewed the District Court's Memorandum Opinion and disagree with counsel’s intemperate characterization, which we believe demonstrates a lack of professional civility.

. Pitts asserts in his brief on appeal that his counsel "explained the nature of the expert testimony and the reasons why such evidence was not only relevant, but also critical to the defense of the case” during a chambers conference. (Appellant's Br. 12.) As Pitts has provided no transcript or other record of the in-chambers discussion, the contents of this discussion are not properly part of the record on appeal.

. Pitts further argues that the District Court's denial of his ex parte motion violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, he compares himself to defendants who can afford to hire experts and to defendants represented by the Federal Public Defender, which has its own budget and does not need to seek funds for expert witnesses from the court. He contends that as he was represented by CJA counsel and had to seek expert witness funds from the court, he was arbitrarily disadvantaged. Pitts cites no authority in support of this argument, and we do not find it persuasive.