**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**SEFRAH J. LEWIS, JENEE R. GARCIA, and CALEMA L. PENN,**
**Defendants**

Case Nos. ST-12-CR-F390, ST-12-CR-F405, ST-12-CR-F406

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 18, 2013

ERNEST F. BASON, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Plaintiff.*

ANTONIO AROCHO-SOTO, ESQ., National Community Reinvestment Coalition, Washington, DC, *Attorney for Defendant Jenee R. Garcia.*

GREGORY J. FERGUSON, ESQ., Kellerhals, Ferguson, Fletcher, Kroblin, LLP, St. Thomas, USVI, *Attorney for Defendant Calema L. Penn.*

SAMUEL L. JOSEPH, ESQ., Assistant Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, USVI, *Attorney for Defendant Sefrah J. Lewis.*

FRANCIS E. JACKSON, JR., ESQ., Law Offices of Francis Jackson, Jr., St. Thomas, USVI, *Attorney for Defendant Jenee R. Garcia.*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(April 18, 2013)

Presently before the Court is the "Defendant's Motion for Permission to Retain Expert Witness" filed by Defendant Calema L. Penn. The People of the Virgin Islands (the "People") filed a memorandum opposing the motion seeking authority to retain an expert witness, and Defendant Penn filed a reply brief. For the reasons set forth below, the Court will deny Defendant Penn's motion to retain an expert witness.

### I. FACTUAL BACKGROUND.[1]

On or about July 6, 2012, in the late night hours, Defendant Jenee Garcia telephoned her alleged friend Antoinette Warner to join her on a trip to the Splash-N-Dash Car Wash in Four Winds Plaza, which they had done in the past. Ms. Warner accepted the invitation, and Ms. Garcia picked her up in a vehicle. At that time, Ms. Garcia advised Ms. Warner that she first needed to stop at Coki Point Beach to pick up another friend.

Upon their arrival at Coki Point Beach, Ms. Garcia exited the automobile and walked away. Shortly thereafter, Ms. Warner received a text message from Ms. Garcia requesting that Ms. Warner join her on the

---

[1] The facts recited are gleaned from the affidavit attached to the Information, and are used solely for the purpose of giving context to this opinion.

beach. Ms. Warner obliged, exited the vehicle, and walked toward Ms. Garcia. Ms. Warner passed another parked vehicle in which she saw Defendant Calema Penn sitting. Ms. Garcia began to return to her car, and Ms. Warner followed her. Then, Ms. Penn and Defendant Sefrah Lewis exited the second car, and all three Defendants allegedly attacked Ms. Warner. The three Defendants are alleged to have held Ms. Warner on the ground and beat her with their fists and a wooden 2 x 4. It is further claimed that during the course of the attack, the Defendants purloined Ms. Warner's cellular telephone. Some other persons saw the commotion and approached the scene, at which time the Defendants left the area.

Ms. Warner suffered various physical injuries as a result of this attack. At this time, in a twelve-count Information, each Defendant faces the following four charges: 1) second degree robbery;[2] 2) first degree assault;[3] 3) grand larceny;[4] and 4) conspiracy.[5] Also, each Defendant is alleged to have aided and abetted the others.[6]

## II. LEGAL DISCUSSION.

In this matter, Defendant Calema Penn, through her court-appointed attorney, asks that the Court grant her permission to retain an expert witness at the public expense, specifically Jennifer E. Dysart, PhD, to assist her in her defense. Defendant Penn's motion is premised on title 5, section 3503(b) of the Virgin Islands Code, which provides,

> Attorneys at law appointed by the Superior Court under subsection (a) of this section to represent defendants financially unable to employ counsel may be allowed the necessary expenses, upon verified statements thereof being filed with the clerk of the court, and reasonable compensation for their services in carrying out their assignments. The amount of such compensation shall, in each case, be fixed by the court and such compensation and expenses shall be paid out of money appropriated for that purpose by law.

---

[2] V.I. CODE ANN. tit. 14, §§ 1861, 1863(1).
[3] 14 V.I.C. §295(3).
[4] 14 V.I.C. §§ 1081, 1083(1).
[5] 14 V.I.C. §551(1).
[6] 14 V.I.C. § 11(a).

Defendant Penn makes the instant request because she believes the People will use one of the persons who purportedly saw the attack on Ms. Warner to identify her. According to Defendant Penn, the purported witness may have only seen the person identified as her from a distance and did not provide a statement to law enforcement until eighteen (18) days later. Further, Defendant Penn contends that the incident took place at night when visibility is decreased, and the putative witness only positively identified one of the attackers to law enforcement officials.[7] Defendant Penn relies on a host of legal authorities for the proposition that eyewitness identifications are very unreliable, and that the exclusion of expert witness testimony on the subject of eyewitness reliability may be reversible error.

Oddly, the People oppose the motion on the basis that eyewitness expert testimony in this case would be inadmissible at trial under the hearsay rules. The People also point out, however, that Ms. Warner, the victim, knows all three Defendants, and identified all three of them as her attackers. In her reply memorandum, Defendant Penn asserts that the People's response was untimely.[8] She also contends that the Court's denial of her request may result in a violation of her due process rights under Virgin Islands case law.[9] She concludes by reiterating that the eyewitness identification expert testimony is the only manner by which the jury may be properly informed about the unreliability of eyewitness identifications.

 Defendant Penn correctly cites to *Edwards v. Government* as the leading case in the Virgin Islands discussing the legal standard applicable to an indigent criminal defendant's request for expert witness services under title 5, section 3503(b), of the Virgin Islands Code. Unlike a criminal defendant's indisputable right to have the assistance of legal counsel at government expense in a criminal proceeding under the Sixth Amendment to the United States Constitution,[10] there is no corresponding general constitutional right of a criminal defendant to obtain the services of an expert witness at the public's cost unless her due process rights are

---

[7] The purported witness identified Defendant Sefrah Lewis as one of the assailants.

[8] Defendant Penn also filed a motion for extension of time to file her instant motion. The Court will accept both the belated motion and response in a separate order.

[9] *See Edwards v. Government*, 47 V.I. 605, 615-17 (D.V.I. 2005).

[10] *Gideon v. Wainwright*, 372 U.S. 335, 342-45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

implicated.[11] Under Section 3503(b), ". . . an indigent defendant seeking to obtain expert services must make a threshold showing that an expert is both necessary and material to her defense, and may not rest on bare undeveloped assertions that the requested assistance would be beneficial."[12] In adopting this standard, the Appellate Division of the District Court of the Virgin Islands noted the similar purposes and language of Section 3503(b) and the provisions of the federal Criminal Justice Act, which vests district courts with the discretion to allow the use of public funds for the retention of expert services by indigent criminal defendants.[13] Because these territorial and federal acts serve similar ends, this opinion will also rely on cases construing requests for expert services filed with United States district courts under the federal Criminal Justice Act.

■■ The purpose of acts which allow indigent criminal defendants to seek the assistance of experts at the public expense is ". . . to redress the imbalance in the criminal process when the resources of the . . . Government are pitted against . . ." them.[14] Nevertheless, a trial court is not under any compulsion to authorize the publicly-sponsored retention of an expert witness for a criminal defendant whenever there may be a contested issue for which expert testimony might be desirable.[15] Rather,

---

[11] *Edwards v. Government*, 47 V.I. at 616 ("Although there is no constitutional right to state-sponsored expert services, such a right may be implicated where an expert witness is shown to be necessary to mounting a meaningful defense and ensuring a fundamentally fair trial.") (citing *Ake v. Oklahoma*, 470 U.S. 68, 76-77, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985) and *Caldwell v. Mississippi*, 472 U.S. 320, 323, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985)). The Fifth and Sixth Amendments to the United States Constitution, and the due process provisions of the Fourteenth Amendment, apply to the Virgin Islands through the Revised Organic Act. *See* Revised Organic Act of the Virgin Islands 1954, as amended, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88 (1995) (preceding V.I. CODE ANN. tit. 1).

[12] *Edwards v. Government*, 47 V.I. at 616 (citing and quoting *Caldwell v. Mississippi*, 472 U.S. at 323 and n. 1).

[13] 18 U.S.C. § 3006A(e)(1) ("Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.").

[14] *United States v. Durant*, 545 F.2d 823, 827 (2d Cir. 1976).

[15] *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1128 (10th Cir. 2006).

in meeting the necessity and materiality aspects of the *Edwards* test, an indigent criminal defendant must also demonstrate that her proposed defense is plausible based on the circumstances of the particular case.[16]

■ In asserting a plausible defense in furtherance of a request for the retention of expert services, a defendant may be required to disclose her theory of the case. The Court recognizes that this information may encompass attorney work product which the defense bar will undoubtedly wish to avoid disclosing to the prosecution and the public. Under Virgin Islands law, documents filed with the Court are presumptively public and available to anyone for inspection.[17] However, Virgin Islands law also provides that "[r]ecords which represent and constitute the work product of an attorney, which are related to litigation or claim made by or against a public body" are confidential.[18] Of course, a criminal prosecution is litigation brought by a public body. Moreover, attorney work product is not subject to discovery under the procedural rules followed by this Court.[19] Thus, a defendant is authorized to file a motion to retain expert services under seal if she is required to disclose attorney work product in the course of demonstrating a plausible defense and why the expert services are material and necessary to her defense.

■ In this case, Defendant Penn fails to present a plausible defense in support of her request for authorization to retain Dr. Dysart. Defendant Penn emphasizes that the witness she suspects the People will use to identify her did not provide a solid description of her, did not make any statement to police for more than two (2) weeks after the incident, and that any identification was made under questionable lighting. While not explicitly stated, it is apparent that Dr. Dysart will be used by this Defendant to support a defense of mistaken identity. However, Defendant Penn does not at all address that, as the People point out, the victim and all of the attackers were friends or at least knew each other. According to

---

[16] *United States v. Pitts*, 346 Fed. Appx. 839, 841 (3d Cir. 2009) ("When evaluating a motion for the services of an expert witness under § 3006A(e)(1), before addressing the question of necessity, a court should first satisfy itself that a defendant *may have a plausible defense.*") (italics in original). *See also United States v. Howard*, 621 F.3d 433, 447 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1623 (2011); *United States v. Ward*, 89 Fed. Appx. 382, 383 (4th Cir 2004).

[17] 3 V.I.C. § 881(a), (b); 4 V.I.C. § 241. *See Santiago v. People*, 51 V.I. 283, 297-98 (V.I. 2009).

[18] 3 V.I.C. § 881(g)(4).

[19] SUPER. CT. R. 7, 12; FED. R. CRIM. P. 16(b)(2).

the documents on file, Ms. Warner, the victim, clearly: 1) identified Defendant Penn sitting in the second vehicle when she arrived at Coki Point; 2) stated that both Ms. Penn and Ms. Lewis exited the second automobile and approached her; and 3) averred that Defendant Penn and the other two Defendants held her down on the ground and beat her with a wooden 2 x 4. In light of the victim's familiarity with Defendant Penn, and the fact that she saw all of these persons as they attacked her, a defense of mistaken identity simply is not plausible in the absence of other articulated factors. Defendant Penn has not provided these additional assertions. The Court concludes that Dr. Dysart cannot provide useful opinion testimony on the identification of Defendant Penn under these circumstances, and Defendant Penn makes absolutely no proffer in this regard.

 Further, Defendant Penn is incorrect when she asserts that an expert is the only way to address any concerns regarding the assumed witness's identification, or misidentification, of her on the night in question. Many courts have held that a criminal defendant's concerns about the reliability of an eyewitness's identification can be resolved through vigorous cross-examination and the use of appropriate jury instructions, and expert testimony is not absolutely necessary.[20] In this case, based on Defendant Penn's own assertions and the present record, the Court determines that there are multiple avenues for cross-examination of the People's witness, assuming this witness actually presents any identification of her at trial. Moreover, there are a variety of instructions which may be used by this Court on the issue of eyewitness identification to direct the jury to consider the same factors that Dr. Dysart would purportedly recite in her testimony.[21] Finally, the People have not proposed to use any expert testimony to support the identification of any

---

[20] *United States v. Jones*, 689 F.3d 12, 18-20 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1278 (2013); *United States v. Carter*, 410 F.3d 942, 949-951 (7th Cir. 2005); *United States v. Hicks*, 103 F.3d 837, 847 (9th Cir 1996), *overruled on other grounds in United States v. W.R. Grace & Co.*, 526 F.3d 499 (9th Cir. 2008).

[21] *E.g.*, THIRD CIRCUIT MODEL JURY INSTRUCTIONS, CRIMINAL 2009 No. 4.15 (modified for use in the Superior Court). (One of the issues in this case is whether the Defendant is the same person who committed the crimes charged in the information. The People, as I have explained, have the burden of proving every element, including identity, beyond a reasonable doubt. Although it is not essential that a witness testifying about the identification himself be free from doubt as to the accuracy or correctness of the identification, you must be satisfied beyond a reasonable doubt based on all the evidence in the case that the Defendant is the

of the Defendants. Therefore, there is no scientific information which

person who committed the crimes charged. If you are not convinced beyond a reasonable doubt that the Defendant is the person who committed the crimes charged in the information, you must find him not guilty.

Identification testimony is, in essence, the expression of an opinion or belief by the witness. The value of the identification depends on the witness' opportunity to observe the person who committed the crime at the time of the offense and the witness' ability to make a reliable identification at a later time based on those observations.

You must decide whether you believe the witness' testimony and whether you find beyond a reasonable doubt that the identification is correct. You should evaluate the testimony of a witness who makes an identification in the same manner as you would any other witness. In addition, as you evaluate a witness' identification testimony you should consider the following questions as well as any other questions you believe are important:

First, you should ask whether the witness was able to observe and had an adequate opportunity to observe the person who committed the crime charged. Many factors affect whether a witness has an adequate opportunity to observe the person committing the crime; the factors include the length of time during which the witness observed the person, the distance between the witness and the person, the lighting conditions, how closely the witness was paying attention to the person, whether the witness was under stress while observing the person who committed the crime, whether the witness knew the person from some prior experience, whether the witness and the person committing the crime were of different races, and any other factors you regard as important.

Second, you should ask whether the witness is positive in the identification and whether the witness' testimony remained positive and unqualified after cross-examination. If the witness' identification testimony is positive and unqualified, you should ask whether the witness' certainty is well-founded.

Third, you should ask whether the witness' identification of the Defendant after the crime was committed was the product of the witness' own recollection. You may take into account both the strength of the later identification and the circumstances under which that identification was made. You may wish to consider how much time passed between the crime and the witness' later identification of the defendant. You may also consider whether the witness gave a description of the person who committed the crime, and how the witness' description of the person who committed the crime compares to the defendant. You may also consider whether the witness was able to identify other participants in the crime. If the identification was made under circumstances that may have influenced the witness, you should examine that identification with great care. Some circumstances which may influence a witness' identification are whether the witness was presented with more than one person or just the Defendant; whether the witness made the identification while exposed to the suggestive influences of others; and whether the witness identified the Defendant in conditions that created the impression that he was involved in the crime.

Fourth, you should ask whether the witness failed to identify the Defendant at any time, identified someone other than the Defendant as the person who committed the crime, or changed his or her mind about the identification at any time.

If after examining all of the evidence, you have a reasonable doubt as to whether the Defendant is the individual who committed the crimes charged, you must find the Defendant not guilty.).

justice may require to be rebutted by a comparable expert for the defense.

## III. CONCLUSION.

Defendant Calema Penn has articulated some concerns about a potential eyewitness identification by one of the putative witnesses for the People. However, she has not, under the circumstances of this case, articulated a plausible defense which demands the retention of a court-appointed eyewitness identification expert. There are alternate means to address her concerns. Therefore, her motion for the appointment of Dr. Dysart as an expert witness will be denied. An appropriate order to this effect will be issued with this opinion.